Ronald BRULE et al., Plaintiffs, Appellees,

v.

Bradford SOUTHWORTH et al., Defendants, Appellants.

No. 79–1343.

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1979.

Decided Dec. 28, 1979.

Paul L. Foster, Cranston, R. I., for defendants, appellants.

Lynette Labinger, with whom Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Providence, R. I., was on brief, for plaintiffs, appellees.

Before CAMPBELL and BOWNES, Circuit Judges, and CLARKE,* District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal arises from a judgment of the district court awarding partial injunctive relief, and $1,000 damages each, to plaintiffs Ronald Brule and Julio Costa for an alleged violation of their first amendment rights by their superiors at the Rhode Island Adult Correctional Institution (ACI). Defendants Bradford E. Southworth, former director of the Department of Corrections, and William E. Laurie, former assistant director for Adult Services, appeal from the district court's judgment on three grounds: first, that the court lacked subject matter jurisdiction of this suit; second, that the district court's finding that plaintiffs were disciplined in retaliation for their exercise of protected rights was clearly erroneous; and third, that the court's award of damages was unwarranted.

A brief review of the events at ACI during the autumn of 1977 will help clarify the issues. On August 10, the district court entered an opinion holding that certain conditions at ACI amounted to cruel and un-

* Of the Eastern District of Virginia, sitting by designation.

usual punishments in violation of the eighth amendment. *Palmigiano v. Garrahy*, 443 F.Supp. 956 (D.R.I.1977). Sixteen days later, a disturbance at the prison involving two prisoners and a guard led the defendants, Southworth and Laurie, to impose an indefinite lock-up in the maximum security section. Brule, who was then associate director/deputy warden in the maximum security section of ACI, and Costa, a guard captain in maximum security, made public statements criticizing the lock-up. Brule and Costa also testified before a state senate committee and a gubernatorial commission concerning the events leading up to the lock-up. In September, inmates of the maximum security section brought an action in the district court challenging the lock-up on eighth amendment grounds. This suit was eventually successful. *See Jefferson v. Southworth*, 447 F.Supp. 179 (D.R.I.1978), *appeal dismissed*, No. 78–1113 (1st Cir. June 7, 1978). Plaintiffs were subpoenaed by the inmates and again testified in a manner critical of defendants' lock-up policy.

Brule testified on November 14. The next day, Southworth testified and, in addition to defending his own policies, stated that he was seeking to discharge Brule. Later on the same day, November 15, Brule and Costa were present at the maximum security section where they were the senior officers in authority. An inmate named Alfred Bishop, who had attended that day's session of the trial, sought permission from Costa to visit an inmate in another part of the prison to discuss the inmates' trial strategy. Bishop presented a note which had been initialed by the special master appointed by the district court to oversee implementation of the *Palmigiano* order. Costa acceded to Bishop's request. Later, Bishop asked Brule and Costa for permission to circulate a petition among the inmates, ad-

dressed to the district court and calling for retention of Brule in his post as deputy warden. Brule authorized Bishop to proceed and Costa arranged for him to be monitored by guards in the various wings. Later, Costa also granted permission for another inmate, Ralph Cross, to leave his cell to assist Bishop. During the evening, assistant director Laurie entered the prison briefly and observed Bishop out of his cell. Laurie ordered reports on the occurrence from several guards and requested, through an intermediary, that Costa also file a report on it. No attempt was made to elicit from Brule his version of the incident.

The following morning, November 16, Laurie informed Brule that he was suspended with pay pending an administrative hearing. Southworth approached Costa at the federal courthouse, where Costa was preparing to testify, and asked him several questions about the incident of the night before. Southworth then relieved Costa of his duties, placing him on administrative leave with pay. Brule and Costa subsequently received letters informing them that a hearing was scheduled for November 23 on the charge that they granted "special privileges" to an inmate by allowing him to roam the prison unattended.[1]

On November 22, Brule and Costa sought leave to intervene in the pending inmate action against Southworth and Laurie, asserting claims under 42 U.S.C. §§ 1983 and 1985(2). The district court permitted intervention and granted plaintiffs' motion for a temporary restraining order restoring plaintiffs to their jobs and barring defendants from holding a hearing.[2] A judicial hearing was set for December 27, and at the hearing it was agreed that the "whole case" would be heard on the merits at that time. The trial that ensued consumed five court days and ended January 5, 1978. The dis-

---

1. Costa's letter also accused him of giving false answers to the questions asked by Southworth on the morning of the 16th. Testimony at the trial conflicted as to precisely what questions were asked and what answers were given. The district court made no specific finding on this point, but defendants have not pressed on appeal any argument that this exchange between

Costa and Southworth could have provided a sufficient basis for the disciplinary action taken against Costa.

2. The TRO continued in effect, without objection, until the district court issued its opinion in 1979.

trict court issued its opinion on March 2, 1979. Following a stipulation by the parties,[3] final judgment was entered on June 1, 1979. This appeal followed.

## I.

Defendants' first argument purportedly goes to the jurisdiction of the district court, and has a double aspect. They assert on appeal, for the first time, that the district court did not have subject matter jurisdiction to hear the case because the dispute between the parties had not ripened sufficiently to constitute a "case or controversy." U.S.Const. art. III, § 2, cl. 1. This is so, they say, because the "harm" which had befallen the plaintiffs when the court acted—suspension with pay—was not serious or permanent enough to be a violation of a constitutional right under 42 U.S.C. § 1983. Any harm which might later have taken place after the scheduled administrative hearing—such as demotion or discharge—was purely speculative, defendants contend.

While the above argument is presented as jurisdictional, it is plain that its underpinnings rest on the contention that plaintiffs failed to state a claim on which relief could be granted, see Fed.R. Civ.P. 12(b)(6); and we think it fatal that defendants never asserted any such ground in the district court, either before or during trial.[4] Having neglected to assert the defense of failure to state a claim below, defendants have waived their right to assert it now. Fed.R.Civ.P. 12(h)(2); *Black, Sivalls & Bryson, Inc. v. Shondell*, 174 F.2d 587, 590–91 (8th Cir. 1949); 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1392 at 862. Defendants now wish to breathe new life into their waived defense of failure to state a claim by presenting it as a challenge to the court's subject matter jurisdiction—the latter being an issue which, of course, neither the parties nor the court could waive. We see no merit in this approach.

The Supreme Court has taken pains to preserve the distinction between lack of subject matter jurisdiction and the failure to state a claim upon which relief can be granted. *See, e. g., Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 278–79, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946). As the Court stated in *Bell v. Hood*:

> "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."

327 U.S. at 682, 66 S.Ct. at 776. The Court did note two exceptions to this principle, namely that a suit may be dismissed for want of jurisdiction where the alleged claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83, 66 S.Ct. at 776.

Appellants can only hope to prevail, therefore, if they can establish that plain-

---

3. The stipulation of May 30, 1979 provided that Southworth and Laurie would be replaced as official defendants by John Moran and Matthew Gill. Southworth and Laurie remained as individual defendants. It was further provided that Moran and Gill would eliminate any references in the files of Brule and Costa to the November 15 incidents, thus eliminating the need for permanent injunctive relief in this case.

4. Defendants do not deny they failed to present an objection of this nature below. The record shows that defendants' counsel answered plaintiffs' complaint orally at the opening of the trial, admitting or denying the various allegations, but never asserting that plaintiffs had not stated a viable claim. Not only was no formal or informal preliminary motion filed, or objection raised, the issue was never preserved by means of a motion for directed verdict, judgment on the pleadings or the like.

tiffs' claim was immaterial or frivolous at the time the district court asserted its jurisdiction. Plaintiffs' complaint alleged that the defendants took disciplinary action against Brule and Costa by suspending them with pay and that such action was taken to punish plaintiffs for their critical statements concerning the lock-up policy. The disciplinary actions were allegedly taken in reprisal for Brule's testimony of November 14 and to deter Costa from testifying on November 16 in the ongoing federal court trial. Plaintiffs presented testimony below that defendants had a range of disciplinary options available to them at the time they acted against Brule and Costa, and that they had taken the most serious action that was permissible prior to the convening of a hearing, an action that previously had been used only against employees charged with criminal misconduct. Defendant Southworth admitted that he made public his decision to discipline Brule and Costa by placing them on administrative leave. It was admitted that such an action was considered adverse employment action and that it carried with it a suggestion of possible wrongdoing.

We need not decide whether such a retaliatory action pending a prompt administrative hearing would ordinarily state a cause of action under 42 U.S.C. § 1983 and the first amendment. *Compare Ventetuolo v. Burke*, 596 F.2d 476, 479 & n. 6 (1st Cir. 1979). We hold only that plaintiffs' claim—that the actions which had already been taken against them violated their constitutional rights—was not frivolous or insubstantial, especially in the unique context in which it arose involving ongoing judicial proceedings inquiring into conduct at the prison.[5] The district court had sufficient jurisdiction, therefore, to decide whether plaintiffs had made out a federal claim.

Since defendants failed to contest that issue in the district court, it must be taken as conceded that plaintiffs did state a claim, and we accordingly find the issue foreclosed on appeal.

## II.

■ Defendants next claim "the evidence does not substantiate the [district court's] finding that the plaintiffs were placed on leave for the exercise of their First Amendment rights." Under *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), which the district court properly followed, such a finding is made in two phases. First, the plaintiffs bore the burden of showing that their conduct was constitutionally protected and that this conduct was a "substantial factor" in the decision they were contesting. The court was then required to consider whether the defendants had shown, by a preponderance of the evidence, that the decision—here the decision to place plaintiffs on administrative leave—would have been made even in the absence of the protected conduct. *Id.* at 287, 97 S.Ct. 568.

Defendants do not on appeal challenge the district court's finding that plaintiffs' public statements were constitutionally protected, and we therefore do not address, nor need we decide, that question. Their challenge is directed solely at the district court's determination that defendants failed to show by a preponderance of the evidence that they would have made the same decision even had Brule and Costa not been outspoken critics of the prison administration. Under Fed.R.Civ.P. 52(a), the district court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of

---

5. Plaintiffs have cited a number of cases in which short-term retaliatory suspensions have been held to be deprivations of constitutional rights. *See, e. g., Lafferty v. Carter*, 310 F.Supp. 465, 470 (W.D.Wis.1970). While arguably such cases are distinguishable, defendants cite no direct holding in their favor. We emphasize that we are not to be understood as passing on the merits of the question, but we

think plaintiffs' claim at least possesses the minimal surface plausibility necessary to establish jurisdiction, *see Kostka v. Hogg*, 560 F.2d 37, 41 n. 5 (1st Cir. 1977). *Cf. Keefe v. Geanakos*, 418 F.2d 359 (1st Cir. 1969) (temporary suspension of public school teacher pending hearing enjoined to permit district court to hear § 1983 suit).

the trial court to judge of the credibility of the witnesses." *See also Pilkington v. Bevilacqua*, 590 F.2d 386, 388 (1st Cir. 1979) (per curiam). Our review is therefore limited to examining the evidence to determine whether the district court's findings were clearly erroneous.

Defendants' argument is grounded on the assertion that the November 15 "Bishop incident" was of such a serious nature that defendants would not have refrained from the actions they took even had Brule and Costa been supporters of defendants' policies. This assertion is itself premised on a factual issue, that is, the extent to which the Bishop incident constituted either a violation of prison rules or policies or a serious error of judgment on the part of Brule and Costa. The district court found that no rule, regulation or policy of the prison, either formal or informal, prohibited the actions taken by Brule and Costa on November 15. The record supports this finding. Both before and after this incident, other prisoners had been allowed to leave their cells, despite the lock-up, for a variety of reasons, including conducting surveys and holding discussions relating to the federal court action. No disciplinary actions resulted on any of these occasions. Bishop and Cross were provided a degree of supervision which had been considered appropriate for other prisoners both before and after November 15. Defendants admitted that no actual breach of security occurred on November 15. Significantly, defendant Laurie was present at the prison and observed Bishop outside his cell, but took no action to have him returned to his cell or to assign greater supervision to him. The evidence indicated that other prison officers had been disciplined less severely, or not at all, for more serious potential breaches of security and for unprovoked abuse of inmates. The district court's conclusion on this record that the Bishop incident was not the true cause of suspension is not clearly erroneous.

### III.

Defendants' third contention is that the award of damages to each plaintiff is unwarranted because their reinstatement, stipulated to by the Department of Corrections, provides a complete remedy. Plaintiffs testified at some length to the emotional and mental distress which accompanied their suspensions, including such physical manifestations as sleeplessness, nervousness, and irritability. Fellow employees who had formerly been friendly acted "cool" and distant towards them after the suspensions, they said. Plaintiff Brule testified that he suffered embarrassment and anguish when his five-year-old daughter learned from her schoolmates that her father had been suspended.

We have held that a civil rights plaintiff may recover compensatory damages for mental suffering. *Rivera Morales v. Benitez de Rexach*, 541 F.2d 882, 886 (1st Cir. 1976); *see Magnett v. Pelletier*, 488 F.2d 33, 35 (1st Cir. 1973). Defendants argue that the plaintiffs failed to prove that whatever mental distress they suffered was caused by their suspensions rather than by the hostility exhibited by other corrections personnel whom Brule and Costa had criticized or antagonized. Plaintiffs testified, however, that the attitudes of other guards and prison officers changed at the time of the suspensions, several months after their criticisms had begun. We cannot say it was clear error for the district court to credit this testimony and to attribute the mental suffering of plaintiffs to the actions of defendants. Nor, while the amount of damages may have approached the limits of the court's authority, do we think they were so generous as to have exceeded the bounds of its discretion, given all the circumstances. *See Rivera Morales v. Benitez de Rexach*, 541 F.2d 882, 886 (1st Cir. 1976).

*Affirmed.*