**Lewis E. FOSTER, Plaintiff-Appellee,**

v.

**MCI TELECOMMUNICATIONS CORPO-RATION, Defendant-Appellant.**

**No. 83–1438.**

United States Court of Appeals, Tenth Circuit.

Sept. 17, 1985.

Susan S. Sauntry, Washington, D.C. (with Judy A. Julian, Washington, D.C., George W. Mueller, Jr., Denver, Colo., Morgan, Lewis & Bockius, Washington, D.C., and Burns, Wall, Smith & Mueller, Denver, Colo., on the brief) for defendant-appellant.

Penfield W. Tate, II, Denver, Colo., for plaintiff-appellee.

Before McKAY and LOGAN, Circuit Judges, and BURCIAGA, District Judge.*

McKAY, Circuit Judge.

On July 31, 1985, the court entered its Order and Judgment in *Foster v. MCI Telecommunications Corporation*, No. 83–1438 (10th Cir. July 31, 1985). Pursuant to Rule 40 of the Federal Rules of Appellate Procedure, MCI Telecommunications Corporation (hereinafter "MCI") petitioned the court to rehear this case in order to consider issues raised in the appeal but not discussed in the court's Order and Judgment and also to reconsider the court's ruling.

In its petition for rehearing, defendant properly points out that this court failed to address an issue legitimately raised in the briefs. Therefore, the petition for rehearing is granted and the opinion is modified as follows:

Plaintiff was hired by the defendant on April 4, 1978 to work in its Dallas, Texas office as an "Execunet" salesman. Later that year plaintiff transferred to defendant's offices in Denver, Colorado, at the invitation of Mr. John Harrell, supervisor of the Denver office. At the time plaintiff transferred to the Denver area there was only one other Execunet salesperson under Mr. Harrell's supervision. However, the two were soon joined by seven other Execunet salespersons, so that during most of the time plaintiff was with the Denver office the sales force numbered nine Execunet salespersons. Of the nine, plaintiff was the only black. Plaintiff was considered a satisfactory salesman, and his termination had nothing to do with his abilities as a salesman.

As a result of a change in MCI's marketing strategy, the company decided to lay off about half of its Execunet salespeople nationwide. The Denver sales staff was cut from nine to two salespeople. On the morning of June 3, 1980, five of the Execunet salespeople were laid off, and two were moved laterally to management positions.

In terms of sheer sales ability, plaintiff ranked fifth of nine in 1979 and sixth of nine in 1980. The two leading salespeople, both of whom were white, were laid off along with plaintiff and, like plaintiff, were never rehired. The two other whites who were laid off with plaintiff were eventually rehired—one, a white woman, was rehired as an Execunet salesperson in MCI's Arizona office; the other, a white male, was

---

* Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, sitting by designation.

hired into a management position in the Denver office.

Shortly after these events defendant received complaints that Mr. Harrell was a racist. After investigating these complaints the company fired Mr. Harrell, allegedly for other reasons. Plaintiff brought suit under Title VII and 42 U.S.C. § 1981 alleging that in terminating and failing to rehire plaintiff MCI violated his civil rights.

After hearing the evidence the district court concluded that plaintiff had established a prima facie case of discrimination by showing that (1) he was a member of a racial minority, (2) he was qualified for his job, (3) he was removed from his job, and (4) he was laid off when less qualified non-minority employees were retained and was not rehired when the non-minority former employees who sought reemployment were rehired. The court then found that MCI had failed to articulate credible reasons for retaining or rehiring the white employees instead of the plaintiff, finding that the plaintiff had consistently outperformed some of those retained or rehired and that he had more seniority with the company and more managerial experience than some. The court further held that with respect to those individuals for whom MCI had successfully articulated explanations, the various explanations were inconsistent. The court thus concluded that MCI's explanations were post hoc and pretextual. The court further found that because the defendant's attempted explanations were based on subjective criteria, they failed to satisfy the burden placed on the defendant to articulate some legitimate nondiscriminatory reason for failing to rehire the plaintiff. The court went on to find that the plaintiff was the victim of a personnel policy having a disparate impact on minorities since the decision by the defendant to lay off five of its nine salespeople resulted in the elimination of the one black on the sales force. The court then found that the plaintiff had also proved a case under 42 U.S.C. section 1981 by proving that he was intentionally denied an

opportunity to contract by defendant's employment decisions.

The court found that plaintiff was entitled to backpay, and, as a prevailing plaintiff in a 1981 action, to general damages. On the basis of the court's finding that the plaintiff had incurred embarrassment, humiliation, severe anxiety and great emotional suffering, the court awarded the plaintiff $50,000 compensatory damages.

Defendant appeals, claiming that the district court, 555 F.Supp. 330, erred in finding that plaintiff had established a prima facie case, in refusing to accept the defendant's articulated legitimate business reasons for its employment actions with respect to plaintiff, in finding disparate impact, in finding that plaintiff had established a case under section 1981, and in finding that plaintiff had introduced sufficient evidence to support a claim of damages under section 1981.

## I. *The Prima Facie Case*

In *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court outlined the analysis which must be applied in Title VII cases. First, the plaintiff must prove a prima facie case of discrimination. When such a case is established, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for having treated the plaintiff as it did. Finally, if the defendant articulates such an explanation, plaintiff must prove by a preponderance of the evidence that the defendant's stated reason was not the true motivation but a mere pretext. *Id.* at 252–53, 101 S.Ct. at 1093. In order to establish his prima facie case, plaintiff needed to show either that he was as qualified as the retained white workers to remain employed despite MCI's altered business strategy or that he was as qualified for rehire as one of the two white employees who were rehired. *United States Postal Service Board of Governors v. Aikens,* 453 U.S. 902, 101 S.Ct. 3135, 69 L.Ed.2d 989 (1981). The district court found that the plaintiff was laid off although less qualified non-minority employ-

ees were retained and also that the plaintiff was not rehired when the only non-minority former employees who sought reemployment were rehired. Defendant attacks both of these findings as not supported by the evidence, and also asserts that the district court was required to make specific findings concerning the employees less qualified than the plaintiff who were either retained or rehired.

Defendant asserts that prior sales performance and seniority were not critera in determining who should be retained in view of MCI's change in market strategy. However, it should be noted that sales performance and seniority were the only objective categories by which plaintiff could be compared to other employees. Since evaluations of his subjective job abilities were made by Mr. Harrell, who was an accused racist, it was not incumbent upon the district court to accept the defendant's assertion that prior sales performance and seniority were not factors in determining who should be retained and who should be laid off. Plaintiff introduced evidence of prior sales performance, seniority and prior supervisory experience to contradict the defendant's evidence that he was not as qualified for these retained sales positions as those who ultimately filled them. The district court's finding that a prima facie case had been established was based on his decision that prior sales performance, as the only objective evidence, should weigh heavily in his evaluation of whether MCI used improper criteria in making their determination of which employees to retain and which to lay off.

As to the two former salespersons who were placed in the new supervisory positions, the company offered reasons why they were selected over plaintiff. Given their selection by one accused of being a racist, however, the district court could have concluded that race entered into the evaluation. One rehire occurred in Tucson, Arizona, and plaintiff failed to introduce

evidence showing that he had applied for and was rejected for this position. However, shortly after the lay-offs MCI's administrative manager left the Denver office, and one of the former Execunet salespersons, less qualified than plaintiff in objective areas, was rehired to fill this position. Plaintiff's evidence was sufficient for the district court to conclude that he had established that he was as well qualified for this position as the person who received it.

The district court found that the defendant's explanation of these events was pretextual and points to two matters of evidence to support this finding. First, the court points out that Mr. Harrell, who was involved in most of the decisions, was terminated shortly after plaintiff's layoff after having been accused of racist activity. Defendant's witness attempted to introduce evidence at trial that Mr. Harrell was terminated for reasons other than racist activity and asserted that he had, in fact, determined that Mr. Harrell was not guilty of racist acts. The court found that since the defendant had failed to articulate the real reason for which Mr. Harrell was terminated, it did not accept Mr. Gallagher's assertion that he was not terminated because he was racist.[1] Therefore, the court found that Mr. Harrell was terminated because he was racist and that this evidence tended to rebut defendant's articulated business reasons for laying off plaintiff. The court found:

> Gallagher made no attempt to explain who made the charges of racism against Harrell, what evidence was cited to support the charges, or how the investigation was conducted. The facts surrounding the charge that Harrell was a racist remain shrouded in mystery. The undisputed facts are that there was a charge of racism, it was investigated, and Harrell was promptly fired, with no other reason or explanation being given for his termination. Harrell did not testify at the trial.

1. Although defendant attempted to introduce evidence on this point which was excluded by the district court, defendant failed to properly pre-serve its right to appeal that decision. Therefore, as the record stands, no evidence was introduced on this subject.

The other item of evidence the court cites as tending to support a finding of pretext is that an evaluation done of plaintiff by Mr. Harrell during a one-time experimental evaluation process carried out by MCI had not been signed by the plaintiff as was the normal practice. Rather, the plaintiff's name was written in the place for the signature and Mr. Harrell added his own initials after writing in the plaintiff's name. Such evidence in connection with other evidence of racist treatment or racist attitudes on the part of Mr. Harrell is sufficient to form the basis of a finding of pretext. The decisions were effectively made by Mr. Harrell, who was later fired after being accused of racist activity. This same man consistently rated plaintiff low on subjective criteria despite his high performance in the objective areas. While this evidence may not rise to the level of the smoking pistol, the district court had a few spent cartridges on which to base this circumstantial case. We therefore find that the district court's finding that plaintiff was the victim of racial discrimination is supported in the record.

## II. *Damages*

Defendant asserts that the district court erred in awarding plaintiff $50,000 in general damages for having deprived him of his constitutional right to employment.

Defendant relies on *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), for its proposition that substantial damages cannot be awarded for the deprivation of constitutional rights per se. *Carey* held that a plaintiff could recover only nominal damages for a procedural due process violation in the absence of proof of actual injury. *Id.* at 248, 98 S.Ct. at 1044. But the violation here was far from procedural. Defendant deprived plaintiff of his right to be free from employment discrimination and his right to be free from humiliation due to his race. These were violations of plaintiff's substantive rights protected by the thirteenth amendment. In *Carey*, the Court specifically noted that cases awarding damages for deprivation of substantive constitutional rights were not there controlling. *Id.* at 264–65, 98 S.Ct. at 1052–53. One need not look far to find authority for the proposition that substantial damages, both compensatory and punitive, may be awarded for the violation of substantive constitutional rights. We therefore reject defendant's argument that only nominal damages can be awarded for the deprivation of plaintiff's substantive thirteenth amendment rights. *See Konczak v. Tyrrell*, 603 F.2d 13, 17 (7th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Baskin v. Parker*, 602 F.2d 1205, 1210 (5th Cir.1979) (rejecting the same erroneous construction of *Carey*).

It is settled that damages may be awarded for nonpecuniary injury, such as psychological harm, where plaintiff has been deprived of his substantive constitutional rights.[2] In *Baskin v. Parker*, 602 F.2d 1205 (5th Cir.1979), the court recognized that:

> Emotions are intangible but they are none the less perceptible. The hurt done to feelings and to reputation by an invasion of constitutional rights is no less real and no less compensable than the cost of repairing a broken window pane or a damaged lock. Wounded psyche and soul are to be salved by damages as much as the property that can be replaced at the local hardware store.

*Id.* at 1209. Justice requires that plaintiff be compensated for the intangible injuries he suffered as a result of the constitutional

---

**2.** See, e.g., *Brule v. Southworth*, 611 F.2d 406, 411 (1st Cir.1979); *Halperin v. Kissinger*, 606 F.2d 1192, 1207 (D.C.Cir.1979), *aff'd by an equally divided court*, 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981); *Konczak v. Tyrrell*, 603 F.2d 13, 17 (7th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Baskin v. Parker*, 602 F.2d 1205, 1209 (5th Cir. 1979); *Simineo v. School Dist. No. 16*, 594 F.2d 1353, 1357 (10th Cir.1979); *Paton v. LaPrade*, 524 F.2d 862, 871 (3rd Cir.1975); *Williams v. Matthews Co.*, 499 F.2d 819, 829 (8th Cir.1974), *cert. denied*, 419 U.S. 1021, 1027, 95 S.Ct. 495, 507, 42 L.Ed.2d 294, 302 (1974); *Donovan v. Reinbold*, 433 F.2d 738, 743 (9th Cir.1970).

deprivation. The difficulty of setting a money value on intangible, nonpecuniary, but actual damages cannot be permitted to deter society from its duty to compensate plaintiff.

It is the law in this Circuit that

absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial, the [court's] determination of the amount of damages is inviolate.

*Ketchum v. Nall,* 425 F.2d 242, 244 (10th Cir.1970); *Morgan v. Labiak,* 368 F.2d 338, 341 (10th Cir.1966). "Ordinarily this question is primarily for the trial court alone and a determination thereof presents no grounds for reversal on appeal except for manifest abuse of discretion." *Smith v. Welch,* 189 F.2d 832, 837 (10th Cir.1951).

We cannot say that the award here was so excessive as to "shock the judicial conscience," in light of the many other cases upholding large compensatory awards for deprivations of substantive constitutional rights.[3]

[I]n cases involving constitutional rights, compensation should not be approached in a niggardly spirit. It is in the public interest that there be a reasonably spacious approach to a fair compensatory award for denial or curtailment of the right. Specifying such damages will always be difficult, but they must be at least an amount which will assure the plaintiff that personal rights are not lightly to be disregarded and that they can be truly vindicated in the courts.

*Halperin v. Kissinger,* 606 F.2d 1192, 1208 (D.C.Cir.1979), *aff'd by an equally divided court,* 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981) (footnotes omitted). We

agree with this statement and therefore refuse to reverse the trial judge merely because he took a "reasonably spacious approach" to awarding damages for constitutional deprivations.

The judgment of the district court is affirmed.

---

3. *See, e.g., City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 252, 101 S.Ct. 2748, 2752, 69 L.Ed.2d 616 (1981) ($72,910); *Herrera v. Valentine,* 653 F.2d 1220, 1281 (8th Cir.1981) ($300,-000); *Flores v. Pierce,* 617 F.2d 1386, 1392 (9th Cir.1980), *cert. denied,* 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980) ($48,500); *Brule v. Southworth,* 611 F.2d 406, 411 (1st Cir.1979) ($2,000); *Konczak v. Tyrrell,* 603 F.2d 13, 17–18 (7th Cir.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980) (12,500); *Cruz v. Beto,* 603 F.2d 1178, 1186 (5th Cir.1979) ($10,-291); *Simineo v. School Dist. No. 16,* 594 F.2d 1353, 1357 (10th Cir.1979) ($60,000); *Stoddard v. School Dist. No. 1,* 590 F.2d 829, 835 (10th Cir.1979) ($33,000); *Linn v. Garcia,* 531 F.2d 855, 860 (8th Cir.1976) ($1,250); *Redmond v. Baxley,* 475 F.Supp. 1111, 1121–22 (E.D.Mich. 1979) (130,000).