948 F.2d 1562
 Marcus R. MILLER, Plaintiff-Appellant,
v.
Stanley GLANZ, Sheriff, Bob Bates, Deputy Sheriff, Dan
Cherry, Captain, Lance Ramsey, Deputy Sheriff, Jerry Bagby,
Deputy Sheriff, George Rogers, Deputy Sheriff, DeWayne
Harris, Deputy Sheriff, Don P. Holyfield, Director, Clent
Dedek, Commissioner, John Doe, Investigator, Dr. Barnes,
John Doe, Deputy Sheriff, Jane Doe, Nurse # 1, Jane Doe,
Nurse # 2, Johnny F. Dirck, Director of Council on Law
Enforcement Education and Training, Defendants-Appellees.
 No. 91-5024.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 18, 1991.
 
 Marcus R. Miller, pro se.
 Robert H. Henry, Atty. Gen., and Gay Abston Tudor, Asst. Atty. Gen., State of Okl., David Moss, Dist. Atty., and M. Denise Graham, Asst. Dist. Atty., Tulsa, Okl., and John K. Lindsey, Dept. of Public Safety, Oklahoma City, Okl., for defendants-appellees.
 Before ANDERSON, TACHA and BRORBY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 Plaintiff-appellant Marcus R. Miller appeals from a district court order dismissing his 42 U.S.C. § 1983 claims for use of excessive force, deliberate indifference to medical needs, false imprisonment, malicious prosecution, cruel and unusual punishment, biased investigation, discriminatory acts to prolong incarceration, negligent failure to train and certify deputies, and intentional infliction of emotional distress. On appeal, Miller argues that the district court erred in granting defendants' motion to dismiss all of his claims under Federal Rule of Civil Procedure 12(b)(6). In particular, he contends that his complaint, when examined under the less stringent standards afforded pro se plaintiffs, alleges facts sufficient to state a claim, thus entitling him the right to offer evidence to support his claims. We exercise jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings.[1]
 
 BACKGROUND
 
 2
 Because we are reviewing a motion to dismiss granted by the district court under Rule 12(b)(6), the facts we consider on appeal are those contained in the plaintiff's Amended Complaint of August 8, 1990.[2] On December 13, 1989, Appellant Miller--while incarcerated in the Tulsa City-County Jail[3]--became involved in an altercation with Deputy Sheriff Lance Ramsey. Miller had been doing research in the jail's law library and apparently had left the research room without permission. Deputy Ramsey informed Miller that his library privileges were terminated for the day and asked Miller to place his hands behind his back so that Ramsey could handcuff Miller and escort him back to his cell. When Miller refused to be handcuffed behind his back, Deputy Ramsey attempted to use force to handcuff Miller and apparently knocked Miller to the floor. A scuffle ensued and Deputy Ramsey subsequently was able to move Miller and lock him in a nearby holding cell. This scuffle was the subject of a criminal trial in Oklahoma state court in which Miller was convicted of assaulting Officer Ramsey.
 
 
 3
 After placing Miller in the holding cell near the law library, Deputy Ramsey called Deputy Sheriffs Bob Bates and Jerry Bagby. When Bates, Bagby, and an unnamed officer (referred to as John Doe) arrived, they allegedly assaulted Miller, handcuffed his hands behind his back, cuffed his ankles, and beat, choked, kicked and stomped Miller. They also allegedly forced Miller to walk barefoot to his cell, where they handcuffed Miller's arms to the bunk and cuffed his legs to the bars. Miller remained in what he claims was an awkward and painful position for almost two hours. Miller purportedly heard Deputy Bates claim that this form of cuffing inmates was part of the jail's normal policies and procedures. In his complaint, Miller claims that he suffered pain, bruises, internal injuries and emotional distress caused by the actions of these officers.
 
 
 4
 During the days following this incident, Miller submitted several sick call requests, but claims that no medical personnel responded. He claims that although Nurse Robbie Moore treated his cement burns and a Doctor Barnes saw him on December 19th and December 26th, neither the doctor nor the nurses properly examined him for bruises or for neck, shoulder, back and internal injuries.
 
 
 5
 The district court, in an order filed January 29, 1991, dismissed several of appellant's claims on the basis that they were barred by the doctrine of collateral estoppel and dismissed the remainder of the claims because they failed to state a claim for which relief could be granted.
 
 DISCUSSION
 
 6
 We review de novo a district court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted. Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986). Allegations in the plaintiff's complaint are presumed true. Curtis Ambulance of Fla., Inc. v. Board of County Comm'rs, 811 F.2d 1371, 1374 (10th Cir.1987). The complaint will not be dismissed unless it appears that the plaintiff cannot prove facts entitling him to relief. Id. at 1375 (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). We construe a pro se litigant's pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir.1989).
 
 
 7
 Prior to addressing each of appellant's arguments on appeal, we examine the process under Rule 12(b) for ruling on a motion to dismiss for failure to state a claim. The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. In this case, we look to plaintiff's amended complaint filed pursuant to Rule 15(a) because the amended complaint supersedes the original.
 
 
 8
 Rule 12(b) provides that if matters outside the complaint are presented to and not excluded by the court, then the court should treat the motion as one for summary judgment under Rule 56 and not as a motion to dismiss. Fed.R.Civ.P. 12(b); see also Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972). Failure to convert to a summary judgment motion and to comply with Rule 56 when the court considers matters outside the plaintiff's complaint is reversible error. Ohio v. Peterson, Lowry, Rall, Barber & Ross, 585 F.2d 454, 457 (10th Cir.1978); Torres v. First State Bank of Sierra County, 550 F.2d 1255, 1257 (10th Cir.1977). A district court's review of "mere argument contained in a memorandum in opposition to dismiss" does not require conversion to a summary judgment motion. Peterson, 585 F.2d at 457. In Peterson, we also concluded that when a conversion to a Rule 56 motion is proper, "the trial court should give the parties notice of the changed status of the motion and thereby provide the parties to the proceeding the opportunity to present to the court all material made pertinent to such motion by Rule 56." Id. at 457.
 
 
 9
 In this case, the district court clearly relied on materials outside of plaintiff's amended complaint to dispose of at least some of plaintiff's claims under Rule 12(b)(6). In its order, the court stated that plaintiff "had a full and fair opportunity to defend himself against the claim of assault and battery upon a police officer at trial"; the court also referred to certain defenses that plaintiff raised and that the jury rejected at the state court trial. From these references, it is clear that the court reviewed materials outside of plaintiff's amended complaint in determining whether to grant defendant's motion to dismiss.
 
 
 10
 Additionally, in deciding to dismiss plaintiff's claims for deliberate indifference to medical needs, the district court stated that "the record indicates that the plaintiff was seen eleven (11) times by either a doctor or nurse between December 13, 1989 and January 3, 1990." Because we do not find reference to these eleven visits in plaintiff's complaint or in plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, we can only assume that "the record" refers to the state criminal trial record or to other evidentiary matters beyond plaintiff's pleadings.
 
 
 11
 Finally, also in relation to plaintiff's deliberate indifference claim, the court cites to a medical chart and to an affidavit labeled as "Exhibit C to defendant's Motion to Dismiss." The district court's consideration of the medical chart, of the affidavit, and of other material outside of plaintiff's amended complaint was improper when considering whether to dismiss pursuant to a 12(b)(6) motion. Ryan v. Scoggin, 245 F.2d 54, 57 (10th Cir.1957) (motion should have been treated as one for summary judgment when transcript of trial court proceedings were presented to and not excluded by the court).
 
 
 12
 The district court's order reveals that the court failed to convert defendants' motion to dismiss into a motion for summary judgment. In disposing of each of plaintiff's claims, the court specifically stated that defendants' "motion to dismiss" is granted. Thus, the court never informed plaintiff that the motion to dismiss had been converted into a summary judgment motion and never afforded plaintiff ten days to accumulate evidence demonstrating the existence of a genuine issue of material fact prior to a Rule 56 evidentiary hearing. However, despite the district court's consideration of matters outside plaintiff's complaint, the court's error in failing to convert the motion and to comply with Rule 56 is harmless if the dismissal can be justified under Rule 12(b)(6) standards without reference to matters outside of plaintiff's complaint. See R.J.R. Servs., Inc. v. Aetna Casualty & Surety Co., 895 F.2d 279, 281 (7th Cir.1989); Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984); Medina v. Rudman, 545 F.2d 244, 247 (1st Cir.1976), cert. denied, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977). Keeping these principles in mind, we consider each of plaintiff's contentions on appeal.
 
 I. Use of Excessive Force and Battery
 
 13
 Miller contends the district court erred in dismissing his § 1983 claim for use of excessive force and his claim for battery. Because the court improperly reviewed matters outside of plaintiff's complaint when deciding to grant defendants' Rule 12(b)(6) motion to dismiss, we must determine whether that error was harmless. The error is harmless if the allegations of Miller's amended complaint on their face are insufficient to state a claim under § 1983.
 
 
 14
 The use of excessive force by jail officials violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). This standard "should be applied with due regard for the differences in the kind of conduct against which an Eighth Amendment objection is lodged." Whitley, 475 U.S. at 320, 106 S.Ct. at 1084.
 
 
 15
 Where (as in Whitley ) officials act in response to a prison disturbance, their actions are necessarily taken "in haste, under pressure," and balanced against "competing institutional concerns for the safety of prison staff or other inmates." In such an emergency situation, ... wantonness consist[s] of acting "maliciously and sadistically for the very purpose of causing harm."
 
 
 16
 Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991) (quoting Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1084-85). In contrast, in non-emergency situations or when the State's responsibility to the prisoner "does ... not clash with other equally important governmental responsibilities," Whitley, 475 U.S. at 320, 106 S.Ct. at 1084, the Court has held that "deliberate indifference" is the appropriate Eighth Amendment standard. See Wilson, 111 S.Ct. at 2326; Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). We must examine Miller's allegations in light of this need to adjust the Eighth Amendment standard to the context of the prison officials' conduct.
 
 
 17
 Miller first alleges that Officer Ramsey used excessive force in apprehending him and moving him to a holding cell. In his amended complaint, Miller concedes that he resisted Ramsey's instructions to place his hands behind his back; Miller also states that he "wrestled" with Ramsey. Given Miller's resistance, we conclude that this situation involved the type of emergency situation contemplated in Whitley, and we hold that Miller's allegations are insufficient to support a conclusion that Ramsey acted "maliciously and sadistically with the very purpose of causing harm." Whitley, 475 U.S. at 320-21, 106 S.Ct. at 1084-85.
 
 
 18
 Miller next alleges that he again was subjected to the use of excessive force after being placed in the holding cell, this time by three officers acting together. From Miller's amended complaint, we are unable to determine whether, at this point, Miller continued to pose a legitimate threat to the safety of the officers and other prisoners. Therefore, we cannot determine whether to apply the deliberate indifference standard or to apply the standard from Whitley.
 
 
 19
 However, we conclude that Miller's amended complaint, taken as true, sufficiently states a claim under either standard. In his amended complaint, Miller alleges that "Deputy Sheriffs Lance Ramsey, Bob Bates, and Jerry Bagby kicked, choked, beat and stomped me, and almost choking [sic] me to the point of death." He also alleges that Ramsey "jumped on top of me and commenced beating me" and that the officers hit and kicked him in the sides, back of head, and stomach. Elsewhere in the complaint, Miller alleges that he was badly injured, could barely breathe, suffered numerous bruises, and excreted blood caused by internal injuries. These allegations are sufficient to state a claim even under the Whitley standard that the defendant officers acted "maliciously and sadistically with the very purpose of causing harm." On remand, in order to decide which standard should apply to further proceedings, the district court must make a factual determination as to whether Miller posed an emergency-type threat when the defendant officers entered the holding cell to subdue him.
 
 
 20
 After reviewing the record of the state court criminal trial, the district court broadly applied the doctrine of collateral estoppel to dismiss Miller's claims for use of excessive force and battery. As mentioned above, the district court's review of that record on a Rule 12(b)(6) motion was premature. In any event, the transcript of the state court trial suggests that the altercation for which Miller was convicted of battery occurred before Miller was locked in the holding cell. It is necessary to view Miller's allegations as two separate excessive force claims--one before Officer Ramsey placed Miller in the holding cell and the other later, when the other officers arrived. When considering the state court record on remand, the district court should make a separate determination of the collateral estoppel effect of Miller's conviction on the second of these two alleged incidents of use of excessive force. See Ridley v. Leavitt, 631 F.2d 358, 359-60 (4th Cir.1980); Williams v. Liberty, 461 F.2d 325, 327-28 (7th Cir.1972); Basista v. Weir, 340 F.2d 74, 81-82 (3d Cir.1965).
 
 
 21
 With regard to plaintiff's state law claim for battery, we note that a federal court may exercise jurisdiction over a state law claim when a related federal claim is of sufficient substance to support federal jurisdiction. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); Plott v. Griffiths, 938 F.2d 164, 166-67 (10th Cir.1991).[4] The district court dismissed the possibility of pendent state law claims because it held that none of plaintiff's federal claims were substantial. Because we hold that plaintiff's amended complaint states a federal claim under § 1983, we remand for a determination whether to exercise jurisdiction over the pendent claim.
 
 
 22
 Miller also alleges that Sheriff Stanley Glanz, Captain Dan Cherry, Director Don C. Holyfield of Oklahoma's Council on Law Enforcement Education and Training (CLEET), and Commissioner Clent Dedek are responsible for his injuries because they implemented policies and procedures that caused the deputy sheriffs to act unlawfully and because they failed to properly train and certify those deputy sheriffs. In addition, it appears that Johnny F. Dirck has been added as a party defendant due to his current status as Director of CLEET.[5] The district court dismissed claims against these defendants after deciding to dismiss all underlying claims against the deputy sheriffs. Because we remand for the district court's consideration of plaintiff's excessive force claim, we also reinstate plaintiff's claims against defendants Glantz, Cherry, Holyfield and Dirck for consideration on remand.
 
 
 23
 The district court dismissed all claims against Commissioner Dedek because he was improperly named as a party to the suit and has no affiliation with the Tulsa County Sheriff's Office, its deputies, its employees, or its jail. Miller did not argue on appeal that this dismissal was incorrect and, therefore, the district court's order is final as to that point.
 
 
 24
 II. Intentional Infliction of Emotional Distress
 
 
 25
 Miller also argues on appeal that the district court erred in dismissing his claim for intentional infliction of emotional distress. After reading plaintiff's amended complaint, we cannot determine whether plaintiff seeks damages for emotional distress resulting from the constitutional deprivations he asserts or whether the complaint asserts a pendent state law claim for the tort of intentional infliction of emotional distress. In order to construe the complaint liberally, we examine both possibilities.
 
 
 26
 We have held that "damages may be awarded for nonpecuniary injury, such as psychological harm, where plaintiff has been deprived of his substantive constitutional rights." Foster v. MCI Telecommunications Corp., 773 F.2d 1116, 1120 (10th Cir.1985); see also Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) ("mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983"); Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308-09, 106 S.Ct. 2537, 2543-44, 91 L.Ed.2d 249 (1986) (Carey stood for proposition that compensatory damages are available under § 1983 for constitutional violations, regardless of whether the constitutional right violated is procedural or substantive). We concluded above that Miller's amended complaint states a claim for violation of a substantive constitutional right--the Eighth Amendment right to be free from the use of excessive force. Therefore, if it is determined on remand that Miller's Eighth Amendment rights were violated, then he potentially may recover compensatory damages for emotional distress.
 
 
 27
 Plaintiff's amended complaint may also state a pendent claim for the tort of intentional infliction of emotional distress. Again, the district court specifically refused to address pendent state law claims because it held that Miller failed to state a substantial federal claim. Because we hold that Miller's amended complaint states a § 1983 claim for use of excessive force, we remand for a determination of whether to exercise pendent jurisdiction if a pendent claim exists.
 
 III. Deliberate Indifference to Medical Needs
 
 28
 Plaintiff contends that the district court erred in dismissing his claim for deliberate indifference to his medical needs. Although the district court erred in reviewing matters outside the amended complaint, we hold that this error was harmless because Miller's amended complaint--liberally construed and taken as true--fails to state a claim rising to the level of deliberate indifference.
 
 
 29
 The Eighth Amendment, applied to the states through the Due Process Clause of the Fourteenth Amendment, prohibits infliction of cruel and unusual punishments on those convicted of crimes. In Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court recognized that this prohibition applies to the inadequate provision of medical care to prison inmates. However, the Court held that because only the " 'unnecessary and wanton infliction of pain' " implicates the Eighth Amendment, a prisoner advancing such a claim must allege "deliberate indifference" to "serious" medical needs. Id. at 104, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). In Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the Court clarified that the Eighth Amendment's deliberate indifference standard under Estelle has two components: an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. Id. 111 S.Ct. at 2324. With regard to the subjective component, "allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent ... diagnos[is]' simply fail to establish the requisite culpable state of mind." Id. 111 S.Ct. at 2323; see also El'Amin v. Pearce, 750 F.2d 829, 832-33 (10th Cir.1984).
 
 
 30
 Although the injuries and accompanying deprivation of medical care that Miller alleges in his amended complaint may be sufficiently "serious" to meet the objective component of the deliberate indifference standard, the amended complaint fails to allege that any of the defendants acted with the state of mind required to meet the subjective or intent component of the standard. Therefore, based on the allegations in the amended complaint, we agree with the district court that Miller has failed to state a claim for which relief may be granted. The district court's failure to convert to a summary judgment motion on this claim is harmless error, and plaintiff's claim for deliberate indifference to his medical needs is dismissed.
 
 IV. Cruel and Unusual Punishment
 
 31
 Miller further contends that the district court incorrectly dismissed his separate claim that Officers Bagby, Bates, and John Doe violated his Eighth Amendment right to be free from the infliction of cruel and unusual punishment when they cuffed his hands to a "bare bunk," cuffed his legs "to the bars," and caused him to be "stretched out in an awkward position ... for almost two hours." The complaint also names Glanz, Holyfield, Dedek, and Cherry, claiming that this treatment was a result of their policies and procedures. Relying on Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981), and Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986), the district court held that Miller's "claim does not rise to the level of cruel and unusual punishment under the Eighth Amendment." We agree.
 
 
 32
 In analyzing Miller's deliberate indifference claim, we focused on the subjective or intent component of the Eighth Amendment standard; here, however, we look to the objective component--whether Miller's pain or deprivation was sufficiently serious to constitute cruel and unusual punishment under the Eighth Amendment. In Rhodes v. Chapman, 452 U.S. 344, 345, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59 (1981), the Supreme Court stated that conditions are not necessarily cruel and unusual simply because they are "restrictive and even harsh." This court has stated that the "pain" associated with an Eighth Amendment violation "means more than momentary discomfort; the attack must have resulted in either severe pain or a lasting injury." Sampley v. Ruettgers, 704 F.2d 491, 495 (10th Cir.1983); see also Brown v. Bigger, 622 F.2d 1025 (10th Cir.1980) (no Eighth Amendment violation when prison guards forcibly put a prisoner suffering from a stab wound into his bed). We agree with the district court that cuffing Miller in an awkward position for almost two hours did not cause the severe pain or lasting injury required to amount to an Eighth Amendment violation. The claim is dismissed.
 
 
 33
 V. Perjury and Conspiracy to Present Perjured Testimony
 
 
 34
 Miller also argues that the district court should not have dismissed several of his § 1983 claims related to the prior state court proceeding in which he was convicted of criminal battery on Officer Ramsey. Miller's amended complaint entitles one of these claims "False Imprisonment and/or Malicious Prosecution." However, the complaint's language essentially alleges that defendants Ramsey, Bagby, Bates, Harris, Beasley, and Nurse Jane Doe procured plaintiff's battery conviction by giving false or contradictory testimony at trial. In Briscoe v. LaHue, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Supreme Court established that all witnesses--police officers as well as other lay witnesses--are absolutely immune from civil liability under § 1983 based on their testimony in a prior trial. Therefore, Miller's amended complaint fails to state a cause of action based on the alleged perjury.
 
 
 35
 In addition, Miller's amended complaint alleges that these same defendants--as well as Captain Cherry--violated his civil rights by conspiring to give false testimony. The First and Second Circuits have held that the immunity allowed in Briscoe should not extend to conspiracies to present false testimony. Malachowski v. City of Keene, 787 F.2d 704 (1st Cir.), cert. denied, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (2d Cir.1986); San Filippo v. U.S. Trust Co. of New York, Inc., 737 F.2d 246 (1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). The Sixth and Seventh Circuits, on the other hand, have extended Briscoe immunity to alleged conspiracies to commit perjury. Wilkins v. May, 872 F.2d 190, 192 (7th Cir.1989), cert. denied, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990); Alioto v. City of Shively, Kentucky, 835 F.2d 1173, 1174 (6th Cir.1987). We agree with the Sixth and Seventh Circuits, and we hold that Miller fails to state a conspiracy claim because defendants are absolutely immune from civil liability.
 
 
 36
 When resolving issues of absolute immunity, we take a functional approach and consider factors such as "recognition of immunity at common law, the risk of vexatious litigation given the function involved, and the availability of checks other than civil litigation if absolute immunity was recognized." Robinson v. Volkswagenwerk AG, 940 F.2d 1369, 1370-71 (10th Cir.1991). At common law, no cause of action was available for conspiracy to give or to procure perjured testimony.[6] Further, we find nothing in the legislative history of the Civil Rights Act of 1871 suggesting that Congress intended to provide a cause of action for conspiracy to commit perjury in order to obtain a criminal conviction. See Briscoe, 460 U.S. at 340, 103 S.Ct. at 1118 (Civil Rights Act of 1871 created federal claim for conspiracy to commit perjury aimed at procuring unjust acquittals).
 
 
 37
 In Briscoe, the Court acknowledged that granting police officers immunity from civil liability might lead to occasional unjust convictions based on knowingly false testimony. Id. at 344-45, 103 S.Ct. at 1120-21. However, the Court--forced to find " 'a balance between the evils inevitable in either alternative' "--determined that immunity would better serve "the broader public interest." Id. at 345, 103 S.Ct. at 1120 (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)). In particular, the Court reasoned that
 
 
 38
 "[p]olice officers testify in scores of cases every year, and defendants often will transform resentment at being convicted into allegations of perjury by the State's official witnesses.... [E]ven the processing of a complaint that is dismissed before trial consumes a considerable amount of time and resources.
 
 
 39
 This category of § 1983 litigation might well impose significant burdens on the judicial system and on law enforcement resources. As this Court noted when it recognized absolute immunity for prosecutors in Imbler, if the defendant official 'could be made to answer in court each time [a disgruntled defendant] charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.' "
 
 
 40
 Id. 460 U.S. at 343-44, 103 S.Ct. at 1119-20 (quoting Imbler v. Pachtman, 424 U.S. 409, 425, 96 S.Ct. 984, 992, 47 L.Ed.2d 128 (1976)) (alteration in original). Allowing criminal defendants to seek damages under § 1983 for conspiracy among state witnesses to offer false testimony would give rise to the same systemic concerns noted in Briscoe. Instead of suing state witnesses for perjured testimony, a defendant could simply transform the perjury complaint into an allegation of a conspiracy to do the same. Moreover, an extension of Briscoe prevents self-censorship on the part of witnesses due to the fear of civil liability. Id. 460 U.S. at 333, 103 S.Ct. at 1114.
 
 
 41
 Most importantly, in Briscoe, the Court pointed to various "truth-finding safeguards of the judicial process" that decrease the likelihood that perjured testimony will significantly harm or alter a just outcome at trial. Id. at 344-45, 103 S.Ct. at 1120-21. These safeguards also apply to attempted conspiracies to give perjured testimony. At trial, the co-conspirator witness subsequently must take an oath, be subjected to cross-examination, and be scrutinized for credibility by the trier of fact. See id. at 342, 103 S.Ct. at 1119. Therefore, after employing the functional approach, we must conclude that the defendants are entitled to immunity under the circumstances of this case.
 
 
 42
 Our holding does not change the fact that such conspirators may be liable criminally for conspiring to procure perjured testimony. See Okla.Stat. tit. 21, §§ 421, 491; see also Briscoe, 460 U.S. at 339 n. 22, 103 S.Ct. at 1117 n. 22 ("witnesses were traditionally subject to a prosecution ... 'for conspiracy in case of a combination of two or more to give false evidence' ") (quoting M. Newell, Law of Defamation, Libel and Slander § 44, at 450 (1890)). Further, although potential conspirators are immune from civil liability, a defendant still may challenge an allegedly unjust conviction in habeas corpus proceedings.
 
 
 43
 In short, we conclude that the extension of absolute immunity from civil liability to those who allegedly conspire to present perjured testimony in furtherance of a criminal conviction serves the same important purposes of immunity to witnesses themselves. Confident in the safeguards inherent in the " 'crucible of the judicial process,' " Briscoe, 460 U.S. at 334, 103 S.Ct. at 1115 (quoting Imbler, 424 U.S. at 440, 96 S.Ct. at 999), we strike a difficult balance in favor of immunity.
 
 
 44
 VI. Discriminatory Acts to Prevent the Posting of Bond and
 
 
 45
 to Prolong Incarceration
 
 
 46
 Miller also contends that the district court erred in dismissing his claim of deliberate, willful, discriminatory and prejudicial acts designed to keep him incarcerated and to deprive him of the paid counsel of his choice. In his amended complaint, Miller alleges that, at the time the altercation with Ramsey took place, he was ready to post bail on the two crimes for which he had previously been arrested and that he had arranged for a particular lawyer to represent him on these two claims. The complaint further alleges that "[a]ctions and statements made by Officers Lance Ramsey, Bob Bates, Jerry Bagby, DeWayne Harris, and investigator Beasley or John Doe is what compelled the Judge to set me a Bond of $50,000 dollars for the purpose of keeping me incarcerated." The complaint alleges that Miller could not pay the increased bail and, as a result, was unable to hire and pay the attorney of his choice.
 
 
 47
 Except for the broad accusation of defendants' "acts and statements" to the judge, plaintiff does not specifically allege that defendants did anything to cause the judge to set bail at $50,000. Although we liberally construe the complaint of a pro se plaintiff, the liberal construction rule "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be heard." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991). Because plaintiff's amended complaint does not point to any specific act besides the setting of bail by the state court judge (who is not a named defendant in this suit), we agree with the district court that these particular allegations fail to state a claim under § 1983.
 
 VII. Appointment of Counsel
 
 48
 In his appellate brief, Miller requests that counsel be appointed by the court. The federal statute that provides for proceedings in forma pauperis, 28 U.S.C. § 1915(d), states that "[t]he court may request an attorney to represent any such person unable to employ counsel...." The appointment of counsel under section 1915(d) is within the sound discretion of the district court. Blankenship v. Meachum, 840 F.2d 741, 743 (10th Cir.1988); McCarthy v. Weinberg, 753 F.2d 836 (10th Cir.1985). In McCarthy, we cited the observation of the Seventh Circuit "that 'if it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to represent him.' " 753 F.2d at 838. Because we hold that the complaint does state a claim for which relief can be granted, on remand the district court should consider whether to appoint counsel for plaintiff Miller.
 
 
 49
 We REVERSE the district court's dismissal of Miller's Eighth Amendment claim arising from the use of excessive force; we AFFIRM the district court's dismissal of the remainder of plaintiff's federal claims; and we REMAND for further proceedings consistent with this opinion. The mandate shall issue forthwith.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 In his appellate brief, Miller contends that the district court should have allowed him to file an amended complaint. Because the district court did give leave for Miller to amend his complaint and because we are reviewing allegations in the amended complaint filed August 8, 1990, we agree with the district court that Miller's contention is moot
 
 
 [3]
 Miller was confined at the jail while awaiting trial on unrelated charges of larceny and unlawful possession of a controlled substance
 
 
 [4]
 Congress recently enacted 28 U.S.C. § 1367, which governs the area of pendent claim jurisdiction and refers to such jurisdiction as "supplemental jurisdiction." However, § 1367 applies only to civil actions commenced on or after December 1, 1990. Because this action was commenced on June 27, 1990 before the effective date, we apply law in effect prior to § 1367, namely United Mine Workers v. Gibbs and its progeny
 
 
 [5]
 After reviewing the record on appeal, we are unable to determine whether the district court granted defendants' Motion to Dismiss on Behalf of Defendant Johnny F. Dirck, filed September 26, 1990. Because the court apparently added Dirck as a party defendant, we assume that he continues to be a party to the suit
 
 
 [6]
 In Hunckel v. Voneiff, 69 Md. 179, 14 A. 500 (1888), the Maryland Court of Appeals stated,
 Witnesses, like jurors appear in court in obedience to the authority of the law, and therefore may be considered, as well as jurors, to be acting in the discharge of a public duty; and, though convenience requires that they should be liable to a prosecution for perjury committed in the course of their evidence, or for conspiracy in case of a combination of two or more to give false evidence, they are not responsible in a civil action, for any reflections thrown out in delivering their testimony.
 Id. at 188, 14 A. 500 (quoting Starkie on Slander 242, 2 Inst. 228, 2 Roll.Rep. 198). See, e.g., Droppelman v. Horsley, 372 F.2d 249 (10th Cir.1967) (applying Oklahoma law); Kessler v. Townsley, 132 Fla. 744, 182 So. 232 (1938); Hocker v. Welti, 239 Ill.App. 392 (1926); Hermon v. Jobes, 198 N.E. 316 (Ind.1935); Siler v. Proctor Coal Co., 272 Ky. 477, 114 S.W.2d 749 (1938); Dunlap v. Glidden, 31 Me. 435 (1850); Schaub v. O'Ferrall, 116 Md. 131, 81 A. 789 (1911); Stevens v. Rowe, 59 N.H. 578 (1880); Ginsburg v. Halpern, 383 Pa. 178, 118 A.2d 201 (Pa.1955); L.B. Frantz, Annotation, Actionability of Conspiracy to Give or to Procure False Testimony or Other Evidence, 31 A.L.R.3d 1423.