**Donna M. PALAZZOLO**

v.

**John R. RUGGIANO, M.D.**

**Civil Action No. 96–661–T.**

United States District Court,
D. Rhode Island.

Feb. 24, 1998.

Charles S. Kirwan, Noelle K. Clapham, Charles S. Kirwan & Assoc., Pawtucket, RI, for Plaintiff.

David W. Carroll, Roberts, Carroll, Feldstein & Peirce, Providence, RI, for Defendant.

### MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

TORRES, District Judge.

The defendant moves, pursuant to Fed. R.Civ.P. 12(b)(1), to dismiss for lack of subject matter jurisdiction.

The sole issue is whether unwelcome touching by a psychiatrist during the course of treating a patient, unaccompanied by the application or threat of physical force beyond the touching itself, gives rise to a federal claim under the Violence Against Women Act ("VAWA"), 42 U.S.C. § 13981.

Because this Court answers that question in the negative, the motion to dismiss is granted.

### Background

From 1992 until 1995 Donna M. Palazzolo was a regular patient of John R. Ruggiano, a psychiatrist. The gist of Palazzolo's claim is that, on three occasions, during otherwise routine counseling sessions, Ruggiano initiated physical contact of a sexual nature. In her deposition, Palazzolo gives the following description of those incidents. In October of 1994, while Palazzolo was being weighed, Ruggiano briefly placed his arms around her waist. In January of 1995, while weighing Palazzolo, Ruggiano placed a hand on her shoulder and pressed his genitals against her buttocks. Like the previous incident, the contact lasted for only a few seconds and the counseling session continued without further incident. Finally, in April of 1995, while reviewing Palazzolo's file, Ruggiano asked her if there was anything in the file indicating that she did not need a kiss and a hug. Palazzolo said "No" and stood up. Ruggiano then approached her, placed his arms around her shoulders, and pressed his genital area against hers. Palazzolo immediately pushed him away and left.

Palazzolo's claim takes the form of a thirteen-count complaint. Twelve of the counts assert a variety of state law claims ranging from medical malpractice and unjust enrichment to battery and invasion of privacy. The federal "jurisdictional hook" is contained in Count I which alleges that Ruggiano's unwelcome sexual contact during the course of his psychiatric treatment of Palazzolo is a crime under Rhode Island law and constitutes a violation of VAWA.

### Discussion

**I. The Standard of Review Under Rule 12(b)(1)**

Once a defendant challenges a court's subject matter jurisdiction, the plaintiff has the burden of establishing that jurisdiction exists. *Bank One, Texas, N.A. v. Montle,* 964 F.2d 48, 50 (1st Cir.1992).

Where the facts underlying the plaintiff's claim are undisputed, all of the well-pleaded facts alleged in the complaint are treated as true and the plaintiff is entitled to all reasonable inferences in its favor. *Murphy v. United States,* 45 U.S. 520, 522 (1st Cir.), *cert. denied,* 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995). However, in ruling on a Rule 12(b)(1) motion, a court is not limited to the face of the pleadings. A court may consider any evidence it deems necessary to settle the jurisdictional question. *Aversa v. United States,* 99 F.3d 1200, 1210 (1st Cir.1996); *see also* 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.30[3] (3d ed.1997).

In this case, for purposes of this motion, the defendant assumes, *arguendo,* that the facts alleged are true.

## II. The Violence Against Women Act

■ The purpose of VAWA is "to protect the civil rights of victims of gender motivated *violence*" by establishing a civil cause of action against a person who commits such "a *crime of violence.*" 42 U.S.C. § 13981(a) and (b) (emphasis added). The cause of action created by VAWA supplements and does not supplant any claims that a plaintiff may have under applicable state law.

In order to fall within the definition of "crime of violence," an act must satisfy two requirements:

(1) The act must "constitute a felony against the person"; *and*

(2) The act must be a State or Federal offense described in 18 U.S.C. § 16 which requires that the act either:

(a) Have, as an element of the offense, "the use, attempted use, or threatened use of physical force against the person or property of another"; *or*

(b) "[B]y its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16. 42 U.S.C. § 13981(d)(2).

## III. Crime of Violence

The predicate "felony against the person" relied upon by Palazzolo is the state law crime of second degree sexual assault. That offense is described in R.I.Gen.Laws § 11–37–4 which provides:

**11–37–4. Definition of guilt of second degree sexual assault.**—A person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person and if any of the following circumstances exist:

(1) The accused knows or has reason to know that the victim is mentally incapacitated, mentally disabled or physically helpless.

(2) The accused uses force or coercion.

(3) The accused engages in the medical treatment or examination of the victim for the purpose of sexual arousal, gratification or stimulation.

The VAWA claim contained in Count I of Palazzolo's complaint, appears to be based solely on the contention that Ruggiano violated subsection (3). It contains no allegations that Ruggiano used "force or coercion" as required by subsection (2). However, in her memorandum, Palazzolo argues that Ruggiano's conduct constituted a violation of both subsections. Since no question has been raised as to whether Palazzolo's complaint forecloses her from arguing the applicability of subsection (2), the Court will address the merits of both arguments.

### A. R.I.Gen.Laws § 11–37–4(2)

■ In order to find a violation of § 11–37–4(2) there must be evidence that the defendant, in engaging in sexual contact, used "force or coercion." Force or coercion is defined by § 11–37–1(2) to include situations in which the defendant:

(A) Uses or threatens to use a weapon, or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

(B) Overcomes the victim through the application of physical force or physical violence.

(C) Coerces the victim to submit by threatening to use force or violence on the

victim and the victim reasonably believes that the victim reasonably believes that the accused has the present ability to execute these threats.

(D) Coerces the victim to submit by threatening to at some time in the future murder, inflict serious bodily injury upon or kidnap the victim or any other person and the victim reasonably believes that the accused has the ability to execute this threat.

Here, Palazzolo relies on subsection (2)(B) that applies when the defendant "*overcomes* the victim through the application of physical force or physical violence." R.I.Gen.Laws § 11–37–1(2)(B) (emphasis added).

■ Under Rhode Island law, the "force or coercion" used in committing a second degree sexual assault must be something more than the sexual contact itself. *State v. Goodreau,* 560 A.2d 318, 323 (R.I.1989); *State v. Jacques,* 536 A.2d 535, 537 (R.I. 1988). It requires the use of additional force that "overcomes" the victim. § 11–37–1(2)(B)

■ Of course, that does not mean that the victim must offer "heroic" resistance in order to be overcome by force. Force that "overcomes" the victim is considered to be used whenever the victim "offer[s] such resistance as seems reasonable under all the circumstances." *Goodreau,* 560 A.2d at 322 (quoting *State v. Carvalho,* 122 R.I. 461, 409 A.2d 132, 135–36 (1979)). Any conduct making it clear that the victim does not consent to the contact is sufficient. *Goodreau,* 560 A.2d at 323. It is physical force or contact taking place after the lack of consent has been manifested that supplies the requisite element of "force or coercion."

In this case, there is no evidence that any such force or coercion was employed. The first two incidents were unexpected and lasted only a few seconds. Palazzolo herself does not claim that she expressed any disapproval or otherwise reacted to the contact. Nor does she allege that Ruggiano made any further advances. Indeed, she acknowledges that the sessions continued without incident.

The third incident differs in two respects. First, Ruggiano announced his intentions, in advance, by asking Palazzolo if there was anything in her file that said she did not need a "kiss and a hug." It is difficult to describe her response as manifesting a lack of consent to the anticipated contact. She answered the question in the negative, thereby indicating that there was not anything in her file that said she did not need a "kiss and a hug" and, then, she stood up. Moreover, it was not until after Ruggiano embraced her that she pushed him away. Ruggiano made no further advances after that manifestation of resistance. Nor did he attempt to prevent Palazzolo from departing.

Palazzolo does not allege that Ruggiano had any physical contact with her beyond the sexual touching itself. She also acknowledges that Ruggiano never threatened or coerced her in any way.

In these respects, this case is clearly distinguishable from *Goodreau* upon which Palazzolo relies. There, the sexual contact was more overt and pervasive and the defendant persisted after the victim, a high school girl, had voiced her objections and pulled away from the defendant on several occasions. *See Goodreau,* 560 A.2d at 320, 323.

It may well be that Ruggiano's contact was unwelcome and, if so, his conduct was deplorable and should be punished both criminally and civilly. However, its opprobrious nature does not convert it into an assault involving the "use of force or coercion" within the meaning of § 11–37–4(2) or a "crime of violence" within the meaning of VAWA. To construe these terms in the manner suggested by Palazzolo would negate the express requirements of those statutes; trivialize VAWA and would make every unwelcome sexual touching a violent crime.

There are ample remedies available to Palazzolo and any other person aggrieved by conduct similar to that which she has described that do not require obliterating the distinction between unwelcome sexual contact that involves force or coercion and unwelcome sexual contact that does not. Conduct falling into the latter category is punishable by criminal laws prohibiting battery. *See* R.I.Gen.Laws § 11–5–3. It also provides a basis for a civil damages action on a variety of state law theories such as

those asserted in the remaining twelve counts of Palazzolo's complaint.

### B. R.I.Gen.Laws § 11–37–4(3)

██ The allegations in Count I of Palazzolo's complaint, if true, easily support a finding that the first prong of the "crime of violence" test contained in § 13981(d)(2)(A) has been satisfied. Ruggiano's conduct clearly would constitute "a felony against the person" under R.I.Gen.Laws § 11–37–4(3) because it amounted to engaging in "medical treatment or examination ... for the purpose of sexual arousal, gratification or stimulation." However, for many of the reasons already stated, Palazzolo's allegations are insufficient to support a finding that Ruggiano committed a "crime of violence."

Obviously, the use or threat of physical force is not an element of the offense described in § 11–37–4(3) and, therefore, does not satisfy the definition of "crime of violence" contained in 18 U.S.C. § 16(a). Palazzolo argues that it does satisfy the alternative definition set forth in § 16(b) as an offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b).

Palazzolo offers little support for the proposition that the threat of violence is inherent in a situation where a doctor, in examining a patient, does so for the purpose of sexual gratification. On the contrary, there would be little reason for a doctor to employ physical force in such a situation. Patients who see doctors for medical treatment commonly recognize the likelihood that an examination and perhaps some physical contact will take place and they readily consent. Having obtained such consent, albeit it under false pretenses, a doctor who conducts the examination for improper reasons would have little need to resort to physical force. Indeed, the likelihood that force would not be used in such situations appears to be the reason that subsection (3) was included in § 11–37–4. The situation in which force is used, whether by a physician or someone else, is covered amply by § 11–37–4(2).

In short, by seeking to bring her claim under VAWA, Palazzolo, in effect, is attempting to force a square peg into a round hole.

### IV. Supplemental Jurisdiction

Having determined that the sole federal claim asserted should be dismissed, this Court has discretion to decide whether the accompanying state claims for which no independent jurisdictional basis exists also should be dismissed. The governing principle is set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) where the Supreme Court held that:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

In this case, that principle is especially applicable. Palazzolo asserts twelve separate claims, each of which rests on a different state law theory. Comity dictates that a federal court should refrain from engaging in such a far-ranging assessment of state law, especially when the state courts are more than up to that task.

### *Conclusion*

For all of the foregoing reasons, Ruggiano's motion to dismiss for lack of subject matter jurisdiction is granted.

IT IS SO ORDERED: