Melanie McCANN, Noele Nelson,
and Lisa Nielson, Plaintiffs,

v.

BRYON L. ROSQUIST, D.C., P.C., a Utah
corporation, and Bryon L. Rosquist, in-
dividually, Defendants.

No. 2:97–CV–0535–S.

United States District Court,
D. Utah,
Central Division.

March 19, 1998.

Anthony B. Quinn, Susan J. Mueller, Lar-
ry S. Jenkins, Wood Crapo, Salt Lake City,
UT, for Plaintiffs.

Brent O. Hatch, Heather A. McDougald,
Johnson & Hatch, Salt Lake City, UT, for
Defendants.

## MEMORANDUM DECISION

SAM, Chief Judge.

### INTRODUCTION

This matter is before the Court on Defen-
dants' Motion to Dismiss. Counsel were
present in court on January 7, 1998 for oral
argument. Mary Anne Wood, Larry S. Jen-
kins and Susan J. Mueller appeared on be-
half of Plaintiffs. Defendants were repre-
sented by Brent O. Hatch and Heather A.
McDougald. The Court took the matter un-
der advisement at the conclusion of oral ar-
gument and now issues this memorandum
decision.

## FACTUAL BACKGROUND

Plaintiffs were Defendants' employees. Defendant Dr. Rosquist is a chiropractor. Plaintiffs have accused defendant Rosquist of inappropriate sexual remarks and touchings. They have alleged state law causes of action and have included one federal claim under the Violence Against Women Act ("VAWA") upon which this Court's jurisdiction depends. Defendants have moved to dismiss the VAWA claim, and if the Court does so, the pendant state law claims for lack of jurisdiction. Essentially, the Defendants claim that the alleged acts do not constitute a "crime of violence" and that, as alleged, they were not "motivated by gender." Plaintiffs assert that the felony alleged, U.C.A. § 76–5–404, titled "Forcible sexual abuse", is a "crime of violence" by categorical definition and therefore any allegation sufficient to state a cause of action under section 76–5–404 is a crime of violence for VAWA purposes. Plaintiffs suggest that the Court must make this determination on the basis of how the alleged crime is defined by law without regard to the specific conduct of the defendants.

## STANDARD OF REVIEW

For purposes of a motion to dismiss, the allegations of the complaint are presumed to be true and are construed in the light most favorable to the plaintiffs. *Yoder v. Honeywell, Inc.,* 104 F.3d 1215, 1224 (10th Cir.1997) (well-pleaded allegations are accepted as true and construed in a light most favorable to plaintiff) (quoting *Fuller v. Norton,* 86 F.3d 1016, 1020 (10th Cir.1996)); *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991) (citing *Curtis Ambulance of Fla., Inc. v. Board of County Comm'rs,* 811 F.2d 1371, 1374 (10th Cir.1987)) (allegations of complaint are presumed to be true). The complaint will only be dismissed if it appears that the plaintiffs cannot prove facts entitling them to relief. *Miller,* 948 F.2d at 1565.

## INTRODUCTION TO VAWA/GMVA

In 1994, Congress passed the Civil Rights for Gender Motivated Violence Act (GMVA) as a subtitle to the Violence Against Women Act (VAWA). The GMVA subtitle was intended as the civil rights arm of VAWA.[1] It

provides a civil cause of action for relief from crimes of violence motivated by gender. 42 U.S.C.A. § 13981 (1995) (the act also allows attorneys fees pursuant to § 1988, and recovery of compensatory and punitive damages, and injunctive and declaratory relief). The Act was intended as a supplement to, rather than a replacement for, existing state and federal remedies. S.Rep. No. 103–138, at 51 (1993) (not intended to supplant state tort law); S.Rep. No. 103–138, at 53 (not intended to undermine existing civil rights protections under title VII); *see also Brzonkala v. Virginia Polytechnic Institute and State University,* 132 F.3d 949, 971 (4th Cir.1997) ("VAWA acts to supplement, rather than supplant, state criminal, civil, and family law controlling gender violence."); *Palazzolo v. Ruggiano,* 993 F.Supp. 45, 46–47 (D.R.I. 1998) ("The cause of action created by VAWA supplements and does not supplant any claims that a plaintiff may have under applicable state law.").

A number of courts have discussed the constitutionality of the civil rights provisions of VAWA. The majority of courts that have dealt with the issue have concluded that VAWA is a constitutional exercise of the powers vested in Congress through the Commerce Clause—Article I, Section 8 of the U.S. Constitution. *Brzonkala v. Virginia Polytechnic Institute and State University,* 132 F.3d 949 (4th Cir.1997) (*but see* dissent by Justice Luttig); *Mattison v. Click Corp. of America, Inc.,* 1998 WL 32597 (E.D.Pa., 1998) (No. Civ.A.97–CV–2736); *Crisonino v. New York City Housing Authority,* 985 F.Supp. 385 (S.D.N.Y.1997); *Anisimov v. Lake,* 982 F.Supp. 531 (N.D.Ill.1997); *Seaton v. Seaton,* 971 F.Supp. 1188 (E.D.Tenn.1997); *Doe v. Doe,* 929 F.Supp. 608 (D.Conn.1996). The parties in the present case have not raised this issue. Furthermore, as a matter of judicial restraint the Court must first analyze the nonconstitutional challenges to the statute's applicability in the instant case. *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

In order to state a cause of action under section 13981 (hereinafter "GMVA"), a party

---

1. The short title of that portion of the act is the "Civil Rights Remedies for Gender Motivated Violence Act." P.L. 103–322, Title IV, subtitle C; 108 Stat.1941.

must allege the commission of a "crime of violence motivated by gender." A defendant has committed a "crime of violence" within the meaning of GMVA if he/she satisfies the following requirements:

> (1) The "act or series of acts [must] constitute a felony against the person"; and

> (2) The "act or series of acts" must be a State or Federal offense within the meaning of title 18, section 16 of the United States Code which requires that the offense either:

>> (a) have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," or

>> (b) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

42 U.S.C. § 13981(d)(2)(A); 18 U.S.C. § 16. Furthermore, the "act or series of acts" are "motivated by gender" when they are "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender . . . ." 42 U.S.C.A. § 13981(d)(1).

Dr. Rosquist is accused of having committed acts which constitute forcible sexual abuse—a crime that is a felony under Utah law. U.C.A. § 76–5–404 (1995). Therefore, Plaintiffs have established the first prong of the GMVA requirements. Plaintiffs have conceded that the alleged offense does not include as an element the use, attempted use, or threatened use of physical force and, therefore, does not satisfy subsection (a) of section 16. (Pls.' Mem. Opp. Mot. to Dis., at 3.) Accordingly, the issue before the Court is whether the Plaintiffs have stated a claim based on part (b) of the second prong of the GMVA requirements—that the "act or series of acts" constitute an offense that, by its nature involves a substantial risk that force

may be used within the meaning of section 16(b).

Currently there are only a handful of cases that have applied VAWA. Many of those cases have not contained any relevant discussion of GMVA. Of those that have involved GMVA few have involved any helpful analysis of GMVA's definition of "crime of violence" in a context involving either the type of conduct or the type of predicate crime alleged in this case. In fact, this Court is aware of only eleven federal cases citing the Violence Against Women Act in the context of GMVA. Included in those eleven cases are opinions by the Fourth and Eighth Circuits—*Doe v. Hartz*, 134 F.3d 1339 (8th Cir.1998) and *Brzonkala v. Virginia Polytechnic Institute and State University*, 132 F.3d 949 (4th Cir. 1997). The remainder are district court opinions. Eight opinions have allowed a GMVA action to proceed.[2] The allegations in those cases have been rape, varying forms of criminal assault and battery, and violent physical and mental abuse. Three opinions dismissed the GMVA claims for failure to adequately allege a predicate crime or because the predicate crime was not a crime of violence. *Hartz*, 134 F.3d 1339 (8th Cir.1998) (Sexual exploitation by a counselor or therapist—failure to allege predicate crime and predicate crime, as alleged, not a crime of violence); *Palazzolo*, 993 F.Supp. 45 (Second degree sexual assault—of two part statute, plaintiff failed to allege elements of one part and the second part did not constitute a crime of violence); *Wilson v. Diocese of New York of Episcopal Church*, 1998 WL 82921 (S.D.N.Y., Feb.26, 1998) (Third degree sexual assault—facts as alleged were insufficient to state a claim under any state statute that could be considered a crime of violence). The allegations in the three cases dismissing the GMVA claim involved nonconsensual touching and kissing—actions which sharply contrast with the allegations in the previously mentioned eight cases where the VAWA claims were allowed to proceed.

---

**2.** *Brzonkala,* 132 F.3d 949 (rape); *Mattison v. Click Corp. of America, Inc.,* 1998 WL 32597 (E.D.Pa., Jan. 27, 1998) (sexual assault, battering); *Wesley v. Don Stein Buick, Inc.,* 985 F.Supp. 1288, 1997 WL 748724 (D.Kan., Nov.20, 1997) (aggravated assault); *Crisonino v. New York City Housing Authority,* 985 F.Supp. 385 (S.D.N.Y.1997) (second degree assault); *Anisimov v. Lake,* 982 F.Supp. 531 (N.D.Ill.1997) (rape); *Seaton v. Seaton,* 971 F.Supp. 1188 (E.D.Tenn.1997) (assault and battery); *Newton v. Coca–Cola Bottling Co. Consol.,* 958 F.Supp. 248 (W.D.N.C.1997) (assault); *Doe v. Doe,* 929 F.Supp. 608 (D.Conn.1996) (assault and battery).

With this backdrop of precedent the Court will proceed to determine the intended scope of GMVA.

### SCOPE OF GMVA

Whether Plaintiffs allege a "crime of violence" is not readily determinable by looking only at the statutory language of GMVA or the definition of "crime of violence" in section 16. Hence, an appeal to the legislative history of GMVA and VAWA is warranted in order to enlighten our application of section 16 subsection (b) in the context of GMVA. *See, Barnhill v. Johnson,* 503 U.S. 393, 401, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (appropriate to appeal to legislative history in cases of statutory ambiguity).

VAWA was first introduced in 1990 "in response to the escalating problem of violence against women." S. Rep. 103–138 at 37. To demonstrate the need for the legislation, the Senate reported the following:

> Women in America suffer all the crimes that plague the Nation-muggings, car thefts, and burglaries to name a few. But there are also some crimes, including rape and family violence, that disproportionately burden women..... Both our resolve and our laws must change if women are to lead free and equal lives.

*Id.*

The report continues by stating statistics representing the nature of violence committed against women:

> In 1991 at least 21,000 domestic crimes were reported to the police every week; at least 1.1 million reported assaults-including aggravated assaults, rapes, and murders-were committed against women in their homes that year....
>
> Every week, during 1991, more than 2,000 women were raped, and more than 90 were murdered.... Women are six times more likely than men to be the victim of a violent crime committed by an intimate; ....
>
> Violence is the leading cause of injuries to women ages 15 to 44, ....

S. Rep. 103–138 at 37–38.

The Senate report discusses the problem of violence in terms such as rape, sexual assault, murder, and domestic violence. The report discusses battered women's shelters and situations where women are subject to hitting, attacking, and otherwise fearing for their safety. In the context of providing a civil rights remedy, the Senate stated that "the act provides, for the first time, a Federal civil rights remedy aimed at violent gender-based crimes. It is time for attacks motivated by gender bias [sic] to be considered as serious as crimes motivated by religious, racial, or political bias." *Id.* at 38. While placing special emphasis on domestic violence, VAWA was also intended to respond to needs outside the "family violence arena" where "victims of rape are often unable to find either justice or protection in the criminal justice system." *Id.* at 42. The report states that "[f]or a cause of action to arise under title III, a plaintiff must prove that the crime of violence-whether an assault, a kidnaping, or a rape-was motivated by gender." *Id.* at 51. Finally, in the section by section analysis of the Act, the committee stated that "[t]he conduct covered under [the civil rights] section includes crimes of violence, including felony rape, sexual assault, kidnaping, and any other felonies against the person ( ... ) committed because of or on the basis of gender, and motivated, at least in part, by an animus toward the victim's gender." *Id.* at 64.

Based on the foregoing, it is clear that VAWA was intended to proscribe conduct that contributed to the national dilemma of violence perpetrated against women on account of their gender. While there may be a variety of abuses suffered by women on account of their gender, the focus of VAWA and GMVA is to provide a remedy for victims of violent acts-i.e. rape, assault, kidnaping. Therefore, the Court will now determine whether the Plaintiffs' cause of action alleges the commission of an offense that, by its nature, is consistent with the types of offenses intended to be remedied by VAWA.

### CATEGORICAL APPROACH AND GMVA

Determining what types of offenses constitute a "crime of violence" is not a novelty in the federal courts. On the contrary, federal courts have dealt with the term in one context or another for years. The term "crime of violence" is used in determining sentence

enhancement for Career Offenders (USSG §§ 4B1.1 to .2), Armed Career Criminals (USSG § 4B1.4; 18 U.S.C.A. § 924(e)(3)), or Unlawfully Entering or Remaining in the U.S. having been deported after a conviction of an "aggravated felony." (USSG § 2L1.2.(b)(1)(A); 8 U.S.C.A. § 1101(a)(43)) (these two statutes—2L1.2 and 1101(a)(43)—use 18 U.S.C.A. § 16 as a part of the definition, like the GMVA). The term is also used in the Bail Reform Act (18 U.S.C.A. § 3156(a)(4)(B)) (the definition is very similar to that contained in section 16 but it does not refer to section 16). The Sentencing Guidelines define "crime of violence" at section 4B1.2. That definition is almost identical to the definition of "violent felony" contained in 18 U.S.C.A. § 924(e)(2)(B) (they differ in that the definition in the Sentencing Guidelines requires "burglary of a dwelling" in lieu of "burglary").

In determining whether a particular offense is a "crime of violence" within the meaning of section 16, courts have begun to apply the, so called, "categorical approach." *United States v. Reyes–Castro*, 13 F.3d 377 (10th Cir.1993). The roots of the "categorical approach" are found in the Supreme Court case of *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In *Taylor*, the Court concluded that in order to determine whether a "burglary" was a "violent felony" within the meaning of 18 U.S.C.A. § 924(e), the court should use a uniform categorical approach rather than "depend on the definition adopted by the State of conviction." *Id.* at 590. The purpose being to create certain categories of crimes that would be evaluated the same regardless of the state of origin. *Id.* at 591–

92. The Court explained that a categorical approach required "the trial court to look only to the fact of conviction and the statutory definition of the prior offense."[3] *Id.* at 602.

However, the *Taylor* Court admitted the necessity of looking "beyond the mere fact of conviction in a narrow range of cases" in which the statutory definition of the crime encompassed both conduct that fit clearly within the federally defined category and conduct that fell outside the federally defined category.[4] Without the exception, as articulated in *Taylor*, the policy of federal uniformity would be undermined. One of two problems could occur: (1) conduct that clearly fit within the categorical definition would go unpunished if the state statute that proscribed the conduct was too broad to fit within the federally defined category, or (2) an overly broad statute could be labeled as a per se "crime of violence," thereby creating the risk that conduct falling outside the categorical definition would be improperly punished. *Id.* at 599–600. Either result would create non-uniformity due to the fact that the same conduct that would go unpunished in one state could be punished in another state due to the particular statutory language of the given states. *United States v. Epps*, 987 F.Supp. 22 (D.D.C.1997) (recognizing a division in the district courts as to whether felon-in-possession is a crime of violence and attributing the division to a feeling of being strictly constrained by the categorical approach). A number of courts have recognized and effectively applied the *Taylor* exception. *See generally, United States v. Winter*, 22 F.3d 15 (1st Cir.1994) (when statutory language blankets both violent and

**3.** While the decision in *Taylor* has been used as authority for the general interpretation of "crime of violence," it should be noted that its holding is limited to defining burglary as a "violent felony" for purposes of sentence enhancement pursuant to 18 U.S.C. § 924(e). However, to the extent that the holding supports a policy of federal uniformity, it is as applicable to GMVA as it is to other federal statutes.

**4.** The example given in *Taylor* to illustrate the exception was a state statute that included both the entry of an automobile and the entry of a building as burglary. Under the Court's definition of the category of "generic burglary," a person would need to be charged with entry of a

building to receive the enhancement. Entry of an automobile would not fit within the federally defined category of burglary and would not be the type of offense for which enhancement could be sought by the government. However, instead of determining that this particular state statute did not fit within the federally defined category of burglary, the Court ruled it appropriate to go beyond the statute and consider the actual conduct for which the conviction was obtained. Therefore, while all violations of a given statute may not constitute predicate offenses, if the statute's breadth overlaps into the categorical definition, the facts may be looked at to determine whether the alleged offense fits within the federal uniform category. *Taylor*, 495 U.S. at 602.

non-violent crimes a court may go beyond the legislatures definition of the crime); *United States v. Harris,* 964 F.2d 1234 (1st Cir.1992) (looking at the statutory language alone will not be enough if the statute's language covers violent and non-violent crimes); *United States v. Fernandez,* 940 F.Supp. 387 (D.Mass.1996) (when a statute covers both violent and non-violent conduct, courts may look beyond the statute).

■ This Court concludes that, in the context of GMVA, a policy furthering federal uniformity can and should be applied. In fact, the reference in GMVA to section 16 indicates Congressional intent to set a uniform standard. All actions under GMVA must allege either a predicate crime or an offense that meets the requirements of section 16. That standard helps assure the uniform application of GMVA nationwide. Also, in order to effectuate the policy of uniformity, determination of whether a crime of violence has been alleged should be limited to analyzing the statutory language whenever possible. If the language of a statute encompasses only clearly violent crimes, then the statute can be used as the predicate crime.[5] However, if the statutory language embodies both violent and non-violent crimes, the conduct alleged must be analyzed to determine whether it would qualify as a "crime of violence" within the meaning of section 16.

### U.C.A. 76–5–404

■ In the present action, Plaintiffs have alleged a violation of U.C.A. § 76–5–404.[6] The statute is entitled "Forcible sexual abuse." If the label were to be regarded as persuasive, it is intuitive, as Plaintiffs have suggested, that any violation of the statute would constitute a violent crime. However, the technical definition or label of the predicate crime is not relevant to the determina-

tion of whether a given offense constitutes a "crime of violence." *Taylor,* 495 U.S. at 590–92; *U.S. v. Brunson,* 907 F.2d 117 (10th Cir.1990) (state law definition not applicable in defining "crime of violence").

In fact, the actual language of the statute encompasses a broad range of conduct, not all of which would constitute a "crime of violence" under section 16. While all of the conduct proscribed by the statute is unacceptable, not all of the conduct presents a "substantial risk that physical force against the person ... may be used." 18 U.S.C.A. § 16. Although the State of Utah may define any intrusive or offensive touching as a "forcible sexual abuse" and thereby a seemingly violent crime, the federal standard of "crime of violence", pursuant to GMVA is not so broad. *Palazzolo,* 993 F.Supp. at 48–49 (unwelcome contact is deplorable and should be punished but its opprobrious nature does not convert it into a "crime of violence").

Plaintiffs have argued that, irrespective of the particular conduct in this case, any violation of U.C.A. section 76–5–404 is a "crime of violence." (Pls.' Mem. Opp. Mot. to Dis., at 2.) In support of this conclusion they rely on the Tenth Circuit's holding in *U.S. v. Reyes–Castro,* 13 F.3d 377 (10th Cir.1993) that sexual abuse of a child pursuant to U.C.A. § 76–5–404.1(1) (1990) is a crime of violence under 18 U.S.C. § 16(b). While the holding in *Reyes–Castro* may be influential, it does not control determination of the motion before the Court.

Plaintiffs have focused on language in *Reyes–Castro* that could be read to suggest that any non-consensual act upon another person constitutes a "crime of violence." *Reyes–Castro,* 13 F.3d at 379. Plaintiffs would have the Court read *Reyes–Castro* as expanding the categories of crimes of violence to all felonies involving a non-consensu-

---

**5.** In addition, the predicate crime would need to meet the other requirements of GMVA—i.e. constitute a felony against the person.

**6.** U.C.A. § 76–5–404. Forcible sexual abuse.

(1) A person commits forcible sexual abuse if the victim is 14 years of age or older and, under circumstances not amounting to rape, object rape, sodomy, or attempted rape or sodomy, the actor touches the anus, buttocks, or any part of the genitals of another, or touches the breast of a

female, or otherwise takes indecent liberties with another, or causes another to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless or the sex of any participant.

(2) Forcible sexual abuse is a felony of the second degree.

al act upon another person. It is not clear that the Tenth Circuit's holding was so broad. Furthermore, such a holding has been expressly rejected by at least one other circuit. *U.S. v. Shannon*, 110 F.3d 382, 385 (7th Cir.1997) ("An inference of violence from mere unconsented-to physical contact, ..., would not wash in this circuit.").

Despite plaintiffs' broader urging, the court finds that the Tenth Circuit held in *Reyes–Castro* only that sexual abuse of a child is a crime of violence. Courts have consistently held that sexual crimes involving children as victims meet the definition of "crimes of violence." *U.S. v. Shannon*, 110 F.3d 382 (7th Cir.1997) (sexual intercourse with a 13 year old girl resulting in her impregnation is a crime of violence within the meaning of the sentencing guidelines); *U.S. v. Bauer*, 990 F.2d 373 (8th Cir.1993) (statutory rape is a crime of violence); *U.S. v. Rodriguez*, 979 F.2d 138 (8th Cir.1992) (lascivious acts with minors is a "crime of violence"). In addition, and presumably for the purpose of analogy, the court concluded that "rape would be a crime of violence under 18 U.S.C. § 16(b)." *Reyes–Castro*, 13 F.3d at 379. The Tenth Circuit did not hold that the statute in question—U.C.A. § 76–5–404—was a "crime of violence." Notably, the statute in question does not involve crimes against children nor does it necessarily involve physical impositions as grave in nature as those associated with rape.

Having made that significant distinction, this Court has been unable to find a single case finding that a predicate statute similar to the one at issue constitutes a per se "crime of violence." Furthermore, having reviewed over 100 cases that discuss the term "crime of violence" in a variety of contexts, the Court has not been able to identify a single case that involved conduct similar in nature to the conduct alleged in this case.

Plaintiffs have alleged the commission of numerous acts by defendant Rosquist on the Plaintiffs. Acts that fall within the purview of the alleged predicate crime include defendant Rosquist's touching of Plaintiffs' bodies—clothed and unclothed—, specifically breasts and buttocks, without their consent; and taking indecent liberties with Plaintiffs, including unzipping and removing plaintiff McCann's wet suit near the breast area, pulling out the elastic waist band on plaintiff McCann's stretch pants to look down her pants, and rubbing his genital area against the Plaintiffs' bodies. (Compl.¶¶ 12–93.) While the conduct alleged is offensive and repulsive, and according to U.C.A. § 76–5–404, a felony, it is not of the violent nature required to state a cause of action under GMVA. The actions alleged do not constitute an offense that by its nature involved a substantial risk of the type of physical force required to state a cause of action under GMVA. Likewise, the time, place, manner, and other circumstances alleged are not such that the situation could escalate into one where there would be a substantial risk that physical force would be used. All of the acts alleged appear to have occurred at work or at social activities under circumstances that would have greatly discouraged any escalation of contact to the type of violent conduct required within the meaning of section 16(b) and GMVA.

Based on the foregoing, the Court finds that even upon accepting all of the facts alleged by Plaintiffs as true and construing them in a light most favorable to the Plaintiffs, they are insufficient to sustain a finding that Rosquist's conduct constituted a "crime of violence" within the meaning of title 42 section 13981. Consequently, Plaintiffs have failed to state a claim upon which relief can be granted.

Having found that Plaintiffs have failed to state a claim upon which relief can be granted, it is unnecessary for the Court to address Defendants' contention that Plaintiffs have failed to allege gender motivation as required by GMVA. Nevertheless, Defendants' attempt to characterize the alleged conduct as "amorous" as opposed to being based on "animus" deserves comment. (Defs.' Mem. Supp. Mot. to Dis., at 6.) The notion that non-consensual sexually oriented conduct is actually amorous and therefore not invidiously discriminatory toward the victimized class is clearly wrong. The legislative history makes clear that the "animus" required is something akin to a "gender bias." S.Rep. No. 103–138, at 52. In fact, the perception that a man is somehow less culpable in taking inappropriate liberties with members of

er within the meaning of GMVA.

Accordingly, Defendants' motion to dismiss is granted. Having dismissed the federal cause of action for failure to state a claim, the Court declines to exercise pendant jurisdiction over the remaining state causes of action.[7]

The Court directs the clerk to enter judgment accordingly.

SO ORDERED.

---

**7.** In *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) the Court held that:

[n]eedless matter of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.