**Randa TRUONG, Plaintiff,**

v.

**Ernest SMITH, M.D., Defendant.**

**No. Civ.A. 98–B–332.**

United States District Court,
D. Colorado.

Nov. 19, 1998.

Darold W. Killmer, Miller, Lane, Killmer & Greisen, LLP, Denver, CO, for plaintiff.

Sheila H. Meer, Kimberly A. Porter, Sheila H. Meer, P.C., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant, Ernest Smith, M.D. ("Dr. Smith"), moves to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) and for sanctions pursuant to Rule 11. Also pending is Dr. Smith's objection to Magistrate Judge Patricia A. Coan's order of October 23, 1998. No order entered on such date and, therefore, I deem Dr. Smith's objection as protesting the Magistrate Judge's order of October 26, 1998 ("the October 26 Order"). Plaintiff, Randa Truong ("Ms. Truong"), objects to each motion. The parties presented oral argument on November 19, 1998. During the November 19, 1998 hearing, I notified both parties of my intention to treat Dr. Smith's motion to dismiss pursuant to Rule 12(b)(6) in part as a motion for summary judgment pursuant to Rule 56 because matters outside the complaint are presented. *See* Fed. R.Civ.P. 12(b). Both parties declined to submit any further material made pertinent by Rule 56. For the reasons set forth below, I grant, in part, and deny, in part, Dr. Smith's motion to dismiss. I also deny Dr. Smith's motion for sanctions and objections to the October 26 Order. At this time, I assume jurisdiction exists pursuant to 28 U.S.C. §§ 1331 & 1367 (1998).

## I. DEFENDANT'S MOTION TO DISMISS

In his March 31, 1998 motion to dismiss, Dr. Smith argues primarily the defense of release. In support of such defense, he presents matters outside the complaint. In accordance with Rule 12(b), I treat Dr. Smith's motion to dismiss regarding the defense of release as a motion for summary judgment pursuant to Rule 56. Dr. Smith also argues, without presenting matters outside the complaint, that several of Ms. Truong's claims fail to state a claim upon which relief can be granted. I treat those arguments as properly asserted under Rule 12(b)(6).

### a. Summary Judgment Legal Standards

Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that issues of undetermined material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence present in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a

reasonable jury could return a, verdict for that party. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505; *Mares,* 971 F.2d at 494.

### b. Legal Standards Applicable to Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted); *accord Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988). In reviewing the sufficiency of the complaint, a court must presume that the plaintiff's factual allegations are true and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Meade,* 841 F.2d at 1526.

### c. Defendant's Motion for Summary Judgment Regarding the Defense of Release

The following material facts are undisputed unless otherwise noted. Dr. Smith is a shareholder and employee of HealthFirst Physicians, P.C. ("HealthFirst P.C."). HealthFirst P.C. employed Ms. Truong as a Registered Nurse. Dr. Smith was Ms. Truong's supervisor. On May 15, 1997, Ms. Truong complained of sexual harassment by Dr. Smith. She filed a complaint with the Equal Employment Opportunity Commission in June 1997, claiming gender discrimination, hostile work environment, and retaliation. (Undated EEOC Compl., Ex. B of Def.'s Mot. to Dismiss.)

HealthFirst P.C. and Ms. Truong entered into a "Settlement Agreement and Release" on September 22, 1997, which states, in relevant part:

This Settlement Agreement and Release is entered into this 22nd day of September 1997, by and between Randa Truong, R.N., (hereinafter "Truong") and HealthFirst Physicians, P.C. and HealthFirst Management Service, Ltd., LLLP (hereinafter collectively referred to as "HealthFirst").

\* \* \* \* \* \*

Truong and HealthFirst now wish to compromise and settle all claims between them and avoid the expense and risk of litigation.

NOW, THEREFORE, in consideration of the mutual promises and covenants herein, the Parties agree as follows:

\* \* \* \* \* \*

2. *SETTLEMENT PAYMENT.* Upon the exchange of executed copies of this Settlement Agreement and Release, HealthFirst shall issue a check payable to Truong in the amount of $150,000.00 . . ., this payment is for claims or potential claims related to constructive discharge, outrageous conduct, violation of the Violence Against Women Act, negligent infliction of emotional distress and/or intentional infliction of emotional distress. Truong acknowledges that the Settlement Payment and the other consideration recited herein constitutes a full and reasonable settlement and compromise of all disputes she has or may have against HealthFirst.

3. *RELEASE OF ALL CLAIMS.* In consideration of the payment by Health-First to Truong of the Settlement Payment and other consideration recited herein, Truong, individually and on behalf of her heirs, representatives and assigns, hereby forever releases HealthFirst, its officers, directors, shareholders, owners, agents and employees, *except as set forth in Paragraph 5 below,* as well as any and all subsidiaries, successor corporations or affiliates thereof, form any and all actions claims, demands, attorneys' fees, liabilities or obligation of any nature whatsoever, known or unknown, past or present, arising from or relating to Truong's employment with HealthFirst and from any and all matters asserted, or which could have been asserted, in any state or federal judicial or administrative forum up to the date of this Settlement Agreement and Release.

4. *COVENANT NOT TO SUE.* In consideration of the payment by HealthFirst

to Truong of the Settlement Payment and other consideration recited herein, Truong, individually and on behalf of her hears, representatives and assigns, hereby covenants not to institute any judicial or administrative proceeding against Health-First, its officers, directors, shareholders, owners, agents or employees, *except as set forth in Paragraph 5 below,* or any subsidiaries, successor corporations or affiliates, for any and all actions, claims, damages, attorneys' fees, liabilities or obligations of any nature whatsoever, known or unknown, past or present, arising from or relating to Truong's employment with HealthFirst and from any and all matters asserted, or which could have been asserted in any state or federal judicial or administrative forum up to the date of this Settlement Agreement and Release.

5. *CLAIMS OR LITIGATION AGAINST DR. SMITH.* This Settlement Agreement does not release or otherwise affect Truong's claims against Ernest C. "Chip" Smith, M.D. as an individual. Truong reserves all rights to proceed against Dr. Smith individually. This Settlement Agreement and Release does release all claims against Dr. Smith as a shareholder, owner or employee of Health-First.

Truong, or Truong's counsel, agrees to cooperate with HealthFirst, and Health-First's counsel, in managing discovery and related matters in any potential claim or suit against Dr. Smith so as to minimize disruption and inconvenience to Health-First's business.

(Settlement Agreement and Release of 9/22/97 (emphasis in text of paragraphs 3 & 4 added), Ex. C of Def.'s Mot. to Dismiss.) The agreement is signed by Ms. Truong and the president of HealthFirst P.C. Dr. Smith is not a party to the agreement. Ms. Truong commenced this action against Dr. Smith in his individual capacity on February 12, 1998, alleging six claims for relief: (1) gender-motivated violence in violation of the Violence Against Women Act of 1994, 42 U.S.C. § 13981; (2) assault; (3) battery; (4) false imprisonment; (5) intentional interference with contractual relations or prospective business advantage; and (6) outrageous conduct.

A release is the relinquishment of a vested right or claim to the person against whom the claim is enforceable. *Neves v. Potter,* 769 P.2d 1047, 1049 (Colo.1989); RESTATEMENT (SECOND) OF CONTRACTS § 284 (1981). Agreements exculpating one contracting party from liability have been held enforceable. *See Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781, 784 (Colo.1989) (considering contract provision exculpating party from liability for negligence). Furthermore, a release is an agreement to which general contractual rules of interpretation and construction apply. *Rocky Mountain Ass'n of Credit Management v. Hessler Mfg. Co.,* 37 Colo.App. 551, 553, 553 P.2d 840, 842 (1976). Whether ambiguity exists in a contract is a matter of law for the court to determine. *KN Energy, Inc. v. Great Western Sugar Co.,* 698 P.2d 769, 776 (Colo.1985). Ambiguity exists when "a contract provision is reasonably and fairly susceptible of more than one meaning." *Geralnes B.V. v. City of Greenwood Village, Colorado,* 583 F.Supp. 830, 838 (D.Colo.1984) (citing *Union Rural Electric Ass'n, Inc. v. Public Utilities Comm'n of State,* 661 P.2d 247, 251 (Colo. 1983)).

To ascertain whether contractual provisions are ambiguous, "the language used therein must be examined and construed in harmony with the plain and generally accepted meaning of the words employed and by reference to all the parts and provisions of the agreement and the nature of the transaction which forms its subject matter." *Cheyenne Mountain School Dist. No. 12 v. Thompson,* 861 P.2d 711, 715 (Colo.1993). Parol evidence can be used to vary or contradict the terms of the release when the litigation is between a party to the contract and a stranger thereto. *Neves,* 769 P.2d at 1054. Normally, the interpretation of an ambiguous release is an issue for the trier of fact to decide in the same manner as other disputed factual issues. *DeJean v. United Airlines, Inc.,* 839 P.2d 1153, 1161 (Colo.1992). Where a valid and unambiguous release defeats the cause of action, however, the court has a duty to grant summary judgment. *Id.*

■ Dr. Smith argues that the settlement agreement unambiguously releases Dr. Smith from liability concerning Ms. Truong's claims because each claim emanates from her employment with HealthFirst P.C. Ms. Truong responds that the settlement agreement unequivocally reserves her right to sue Dr. Smith in his individual capacity for any claim, including those that arise from her employment at HealthFirst P.C. I agree with Ms. Truong.

Although Ms. Truong releases and covenants not to sue "HealthFirst, its officers, directors, shareholders, owners, agents and employees," this phrase is modified by the by the statement: "except as set forth in Paragraph 5 below." (Settlement Agreement and Release of 9/22/97 at ¶¶ 3 & 4, Ex. C of Def.'s Mot. to Dismiss.) Paragraph 5 states, in relevant part:

> This Settlement Agreement does not release or otherwise affect Truong's claims against Ernest C. "Chip" Smith, M.D. as an individual. Truong reserves all rights to proceed against Dr. Smith individually. This Settlement Agreement and Release does release all claims against Dr. Smith as a shareholder, owner or employee of HealthFirst.

(Settlement Agreement and Release of 9/22/97 at ¶ 5.) Dr. Smith's reliance on the last sentence of paragraph 5 is misplaced. Had the last sentence been the only sentence of paragraph 5, the paragraph might be ambiguous. Yet when read in conjunction with the first two sentences of paragraph 5, it is obvious that Ms. Truong reserved her right to sue Dr. Smith in his individual capacity for conduct which may result in individual liability. Dr. Smith presents no extrinsic evidence to suggest otherwise. This construction is buttressed by the last two sentences of paragraph 5, which evidence the contracting parties' anticipation of litigation against Dr. Smith, in his individual capacity, for alleged conduct arising from Ms. Truong's employment at HealthFirst P.C.:

> Truong, or Truong's counsel, agrees to cooperate with HealthFirst, and HealthFirst's counsel, in managing discovery and related matters in any potential claim or suit against Dr. Smith so as to minimize

disruption and inconvenience to HealthFirst's business.

(Settlement Agreement and Release of 9/22/97 at ¶ 5.) The distinction between individual capacity and official capacity actions is, of course, recognized in several contexts. *See, e.g., Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, ——, 118 .S.Ct. 2257, 2266, 141 L.Ed.2d 633 (1998) (differentiating between the employee's personal liability and the employer's vicarious liability for the negligent and intentional torts committed by the employee); *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (discussing the practical and doctrinal differences between individual capacity and official capacity actions under 42 U.S.C. § 1983); *Sauers v. Salt Lake County,* 1 F.3d 1122, 1125 (10th Cir.1993) (distinguishing between suits against supervisors in their individual capacity and official capacity under Title VII). Accordingly, I deny Dr. Smith's motion for summary judgment on the issue of release.

I also enter summary judgment in favor of Ms. Truong regarding Dr. Smith's defense of release. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte* where, as here, the losing party had sufficient notice and the opportunity to come forward with all of his evidence). In the settlement agreement, Ms. Truong clearly and unambiguously reserves her right to sue Dr. Smith in his individual capacity for his alleged conduct during her employment at HealthFirst P.C. No genuine issue of material fact exists regarding the defense of release and, therefore, Ms. Truong is entitled to judgment as a matter of law.

### d. Defendant's Dismissal Arguments Under Rule 12(b)(6)

#### 1. *The VAWA / The GMVA*

■ In 1994, Congress passed the Gender Motivated Violence Act ("the GMVA") as a subtitle to the Violence Against Women Act ("the VAWA"). Civil Rights Remedies for Gender Motivated Violence Act of 1994,

Pub.L. 103–322, Title IV, 108 Stat.1941 (codified at 42 U.S.C. § 13981). The GMVA provides a civil cause of action for relief from crimes of violence motivated by gender. The GMVA also allows attorneys fees pursuant to 42 U.S.C. § 1988, recovery of compensatory and punitive damages, as well as injunctive and declaratory relief. The GMVA supplements, rather than replaces, existing state and federal remedies. *Palazzolo v. Ruggiano,* 993 F.Supp. 45, 46–47 (D.R.I.1998); *McCann v. Bryon L. Rosquist,* D.C., P.C., 998 F.Supp. 1246, 1247 (D.Utah 1998).

To state a civil claim under the GMVA, a plaintiff must allege the commission of a "crime of violence motivated by gender." 42 U.S.C. § 13981(c). The GMVA defines a "crime of violence" as "an act or series of acts that would constitute a felony against the person ... and that would come within the meaning of State or Federal offenses described in section 16 of Title 18, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction...." 42 U.S.C. § 13981(d)(2)(A). Section 16 of Title 18 further defines a "crime of violence" as either:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (1997 & Supp.1998). In determining whether a particular offense is a "crime of violence" within the meaning of section 16, courts in the Tenth Circuit apply the "categorical approach" used by the United States Supreme Court in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *McCann,* 998 F.Supp. at 1250 (citing *United States v. Reyes–Castro,* 13 F.3d 377 (10th Cir.1993)). In *Taylor,* the Supreme Court held that courts should use a uniform categorical approach, instead of depending on the definition adopted by the state of conviction, when determining whether certain crimes are violent felonies within the meaning of 18 U.S.C. § 924. *Taylor* at

590, 110 S.Ct. 2143. The categorical approach creates certain categories of crimes that are evaluated the same regardless of the state of origin and, therefore, furthers federal uniformity. *Id.* at 591–592, 110 S.Ct. 2143. The categorical approach requires the trial court "to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602, 110 S.Ct. 2143.

Although for purposes of the GMVA the fact of criminal conviction may not exist, I conclude that, in deciding whether a plaintiff states a claim upon which relief can be granted under the GMVA, federal courts in the Tenth Circuit would apply the categorical approach. Proper use of the categorical approach requires the plaintiff to allege an act or series of acts that constitute both a felony against the person as well as a federal or state offense within the meaning of 18 U.S.C. § 16. *McCann,* 998 F.Supp. at 1251. The court employing the categorical approach must analyze the language of a specific state or federal statute relied on by the plaintiff.

> If the language of a statute encompasses only clearly violent crimes, then the statute can be used as the predicate crime. However, if the statutory language embodies both violent ant nonviolent crimes, the conduct alleged must be analyzed to determine whether it would qualify as a "crime of violence" within the meaning of section 16.

*Id.*

Dr. Smith contends that Ms. Truong fails to state a claim under the GMVA because she fails to plead a predicate offense. I agree. She fails to allege a violation of any specific state or federal statute in her complaint or response to Dr. Smith's motion to dismiss. Although her factual allegations might, if proven, satisfy the elements of one or more state or federal criminal statutes that constitute a crime of violence, it is Ms. Truong's burden to identify the specific statute on which she relies as a predicate offense to support her GMVA claim. It is not for a defendant or the court to guess the statute or statutes on which a GMVA plaintiff relies. Moreover, it is impossible for a court to use the favored categorical approach without re-

ceiving direction as to which specific statutory language to review.

Although Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a), the statement of the claim "must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). And although the plaintiff is not required to state precisely each element of the claim, Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE CIVIL 2d: § 1216, the plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). A court may not assume that a plaintiff can prove facts not alleged, or that the defendant has violated laws in ways not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

Because Ms. Truong does not identify a specific criminal statute allegedly violated by Dr. Smith that constitutes a "crime of violence" as defined by the GMVA and 18 U.S.C. § 16, she fails to state a claim on which relief can be granted under the GMVA. To hold otherwise would vitiate the underlying legal standards of Rules 8(a) and 12(b)(6) and render suspect the existence of federal question jurisdiction. Thus, I dismiss, without prejudice, Ms. Truong's GMVA claim and afford her the opportunity to amend her complaint to rectify this defect. Failure to so amend her complaint within twenty days may cause the dismissal of her entire complaint, however, because diversity jurisdiction does not exist. *See* 28 U.S.C. § 1367(c)(2) (1997); *James v. Sun Glass Hut of California*, 799 F.Supp. 1083, 1084 (D.Colo.1992).

### 2. *Outrageous Conduct*

■ Dr. Smith also argues that Ms. Truong's outrageous conduct claim fails to state an independently cognizable claim under Colorado law. (Def.'s Mot. to Dismiss at 11 (citing *Visor v. Sprint–United Management Co.*, 965 F.Supp. 31, 33 (D.Colo.1997)).) I disagree. Proof of the tort of outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted. *Price v. Federal Express Corp.*, 660 F.Supp. 1388, 1396 (D.Colo.1987) (applying Colorado law). Accepting as true Ms. Truong's factual allegations and construing them in a light most favorable to her, I cannot conclude, beyond a reasonable doubt, that she can prove no set of facts in support of her outrageous conduct claim that will entitle her to relief. Thus, I deny Dr. Smith's motion to dismiss that claim.

## II. DEFENDANT'S MOTION FOR SANCTIONS

Dr. Smith premises his motion for sanctions primarily on his defense of release. Dr. Smith contends that, because Ms. Truong released her claims against Dr. Smith, the entire complaint violates Rule 11. As set forth above, this argument has no merit. In executing the settlement agreement, Ms. Truong reserved her right to sue Dr. Smith in his individual capacity.

Dr. Smith also argues that Ms. Truong's counsel failed to investigate the facts underlying her complaint. In support of such argument, Dr. Smith discusses the merits of the case, including whether Ms. Truong and Dr. Smith were involved in a consensual relationship. Such arguments, however, are more properly presented in a motion for summary judgment under Rule 56. Accordingly, I deny Dr. Smith's motion for sanctions.

## III. DEFENDANT'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER OF OCTOBER 26, 1998

Lastly, Dr. Smith objects to Magistrate Judge Patricia A. Coan's order of October 26, 1998, which directed Dr. Smith "to produce or allow plaintiff to inspect and copy, at Plaintiff's cost all documents and things identified in defendant's Rule 26(a)(1) [disclo-

sures]" on or before October 31, 1998. Dr. Smith contends that the October 26 Order requires him to provide discovery that is inconsistent with the requirements of Rules 26, 34, and 37. Dr. Smith believes that documents and things identified in his Rule 26(a)(1)(B) disclosures need not be produced informally to Ms. Truong, but more properly should be the subject of a Rule 34 request by Ms. Truong, thereby allowing Dr. Smith the opportunity to object to the production of such documents and things on the basis of privilege or other grounds.

Fed.R.Civ.P. 72(a) states that a district judge shall consider objections to a magistrate judge's order "and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." In accordance with this standard, I affirm the decision unless my review of the entire evidence leaves me with "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (quoted with approval in *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1464 (10th Cir. 1988)).

First, I note that the scheduling order entered August 14, 1998 contains the following statement:

> Plaintiff and Defendant propose that disclosures required under Fed.R.Civ.P. 26(a)(1) will be made on or before August 13, 1998. *Counsel agree to cooperate in their coordination of the exchange of documents identified in these disclosures.*

(Ord. of 8/14/98 at 8, ¶ 5(a).) Counsel for Dr. Smith executed the scheduling order, which does not differentiate between Rule 26(a)(1)(B), and Rules 26(a)(1)(C) and 26(a)(1)(D). Considering this agreement, I am not left with the definite and firm conviction that a mistake has been committed by the Magistrate Judge, whose October 26 Order merely requires the parties to act as agreed.

Second, the Comment to the 1993 Amendments states, in relevant part:

> The disclosing party does not, by describing documents under subparagraph (B), waive its right to object to production on the basis of privilege or work product protection, or to assert that the documents are not sufficiently relevant to justify the burden or expense of production.

Fed.R.Civ.P. 26, Comments to 1993 Amendments. Thus, Dr. Smith may still object to production of documents or things within the scope of Rule 26(a)(1)(B) even though the October 26 Order allows Ms. Truong to inspect and copy such documents and things. Fairly construed, the October 26 Order does not waive Ms. Truong's right to object to disclosure if such objection is appropriate. Accordingly, I deny Dr. Smith's objections to the October 26 Order. Lastly, I encourage Dr. Smith and Ms. Truong to present similar objections by filing a motion to reconsider or a motion to clarify, directed to the Magistrate Judge, rather than immediately filing an objection pursuant to Rule 72.

Accordingly, I ORDER that:

(1) defendant's motion to dismiss is GRANTED, in part, and DENIED, in part;

(2) summary judgment is ENTERED in favor of plaintiff regarding defendant's defense of release;

(3) plaintiff's Gender Motivated Violence Act claim is DISMISSED, without prejudice;

(4) plaintiff may amend her complaint within twenty days, which amended complaint, if filed, may include a revised Gender Motivated Violence Act claim; the failure of plaintiff to so amend may result in dismissal of this action for lack of federal question and diversity jurisdiction; further amendment of the original complaint shall be allowed only pursuant to Rule 15 and by specific motion;

(5) defendant's motion to for sanctions pursuant to Rule 11 is DENIED; and

(6) defendant's objection to the Magistrate Judge's order of October 23, 1998, deemed an objection to the Magistrate Judge's order of October 26, 1998, is DENIED.